**In re DIMAS, LLC, Debtor.**

**No. 02–51420–MM.**

United States Bankruptcy Court,
N.D. California.

Dec. 29, 2006.

Javed Ellahie, The Ellahie Law Firm, San Jose, CA, for Debtor.

## MEMORANDUM DECISION AND ORDER ON APPLICATION OF SPECIAL COUNSEL, BERLINER COHEN, FOR FINAL ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

MARILYN MORGAN, Bankruptcy Judge.

### INTRODUCTION

Before the court is the application of Berliner Cohen, special litigation counsel to the chapter 11 debtor, Dimas LLC, for final allowance of compensation in the amount of $727,673.50 and expense reimbursement of $34,347.15. For the reasons set forth herein, compensation of $586,207 and expense reimbursement of $16,515.61 are allowed on a final basis. Requested fees totaling $64,152.50 is disallowed, of which $8,549 is denied without prejudice.

Fees in the amount of $77,314 are reserved for a later determination.

### FACTUAL BACKGROUND

Adrienne Rakitin and her late husband, Demitri Rakitin, acquired the real property commonly known as 1499 Country Club Drive, Milpitas, California in August 1985. The property consists of a 124–acre undeveloped hillside parcel. The history of the Rakitins' quest to develop the property is complex and convoluted. In November 1992, the Rakitins obtained from the City of Milpitas approval of a six-lot vesting tentative map and planned unit development subdivision on the property. The Rakitins intended to retain one of the six lots as their residence. In July 1994, they obtained approval of the final subdivision map, which had to be recorded no later than November 17, 2002, or the subdivision rights would expire, and the property could not be subdivided. Before the final subdivision map could be recorded, however, the Rakitins needed construction financing for some improvements.

The Rakitins filed a chapter 11 petition in 1994 to stop a foreclosure sale of the property. The case was converted to a chapter 7 in 1996. One of the junior trust deed holders obtained relief from the automatic stay in 1997 and completed a foreclosure sale. The Rakitins filed a lawsuit in Santa Clara County Superior Court for wrongful foreclosure and other causes of action. Attorney Steven Finley represented the Rakitins in that litigation.

In 1997, the Rakitins approached Daniel Snyder for assistance in refinancing and developing the property. With the expectation that they would enter into a joint venture agreement to develop the property, Snyder advanced funds to the Rakitins to cover their personal living expenses, to finance the litigation against the junior secured creditor, and to pay other secured

creditors. Dimitri Rakitin passed away in 1998.

Adrienne Rakitin reached a settlement of the wrongful foreclosure action in March 2000. The settlement provided for a reconveyance of title and a reduction in the secured debt. To facilitate the settlement, Ms. Rakitin formed a family limited liability company to hold title to and develop the property. In March 2000, Ms. Rakitin created Dimas, LLC with her sons, Peter Rakitin and Paul Rakitin (collectively, "Rakitin"). Snyder financed the expenses of the formation of Dimas. Ms. Rakitin has served as the managing member since Dimas' formation. Snyder, Dimas, and Ms. Rakitin entered into a joint venture agreement in July 2000 to develop the property. The joint venture agreement provided for the division of profits and for reimbursement of Snyder's advances upon the sale of the lots. It also provided that Snyder would serve as project manager.

Despite these numerous obstacles, Rakitin obtained financing arranged by Investment Grade Loans ("IGL"), a hard money lender, in August 2000. Snyder advanced the funds necessary to close escrow on the IGL loans. Dimas took title to the property concurrent with the close of escrow. On August 7, 2000, Dimas executed three notes serviced by IGL in the amounts of $2,350,000, $251,600, and $108,400, respectively. Three trust deeds securing the notes were recorded in Santa Clara County on August 10, 2000. The beneficial interest in the first deed of trust was held in fractionalized shares among fifteen investors, including Andrew A. Lewis, the principal of IGL. Lewis was the beneficiary under the second deed of trust that secured his broker's commission. He assigned the beneficial interest in the second deed of trust to Bank of Los Altos as security. Although Bank of Los Altos exe-

cuted a release of the assignment on January 5, 2004, the release was never recorded. The third deed of trust secured a finder's fee in favor of third parties. Lewis acquired the beneficial interest in the third deed of trust by assignment in August 2001.

In September 2000, Dimas entered into a joint venture agreement with an investor group including John Ho, Milpitas Countryside Estates Development, Inc. (MCED), and others. John Ho became the project and construction manager for the property. In July 2001, MCED recorded a fourth deed of trust for $1.2 million on the property. Dimas asserts that the MCED deed of trust was unsupported by adequate consideration. It also asserts that the joint venture agreement provided that MCED would keep the mortgage payments on the property current.

Asserting that Dimas and Ms. Rakitin had breached their joint venture agreement, Snyder filed a lawsuit in Santa Clara County Superior Court in January 2001. By that time, Snyder had advanced over $200,000 to Dimas. The parties promptly settled the lawsuit in February 2001 with a payment schedule, mutual releases, and a dismissal with prejudice. Dimas made the payment to Snyder under the settlement. Rakitin, however, was required to secure her payment obligation with a junior trust deed on the property but failed to do so. Based on a breach of the settlement terms, Snyder filed a new action in Santa Clara County Superior Court in September 2001 against Dimas, Ms. Rakitin, John Ho, and MCED. Snyder also recorded a lis pendens on the property.

The obligations secured by the first, second, and third deeds of trust matured by their terms on March 1, 2002. Dimas contends that MCED breached its agreement with Dimas to maintain the mortgage

payments, causing Dimas to default. When Dimas defaulted on the obligations, Lewis commenced non-judicial foreclosure proceedings by recording notices of default. The balance under the third deed of trust at the time was $125,296.39.

Dimas filed a chapter 11 petition on March 13, 2002 to stop the foreclosure sale. At the time the case was commenced, the property was encumbered by three trust deeds controlled by IGL, a fourth deed of trust with MCED as beneficiary, and a lis pendens recorded by Snyder. IGL filed a motion for relief from the automatic stay of § 362(a) to exercise the power of sale in the third deed of trust. Dimas and IGL entered into a stipulation whereby IGL agreed to rescission of the notices of default on the first and second deeds of trust and full reconveyances of the deeds of trust if Dimas deposited $3.285 million in escrow by September 3, 2002 and released the undisputed portion to IGL no later than September 4, 2002. If Dimas failed to comply with the stipulation, IGL could proceed with a foreclosure sale under the third deed of trust. In order to refinance the debt to pay off IGL, Dimas had to remove the fourth deed of trust by MCED and the lis pendens by Snyder.

On Dimas' application, the court appointed Berliner Cohen on May 8, 2002 as special counsel to represent the debtor "in connection with any cause of action applicant may have against its creditor." The employment application stated that the debtor "is involved with ongoing litigation involving breach of contract, fraud, and a complex real estate contract dispute." The application also provides that special counsel's professional services shall include:

- To provide applicant with legal advice regarding any claims for contractual breach and fraud applicant may have against its creditors;
- To take all necessary steps to determine if there is liability on the part of applicant's creditor for breach of contract and fraud;
- To investigate and institute litigation, through trial and judgment, and/or settle or compromise any such claim on behalf of applicant.

Dimas commenced an adversary proceeding on May 31, 2002 against John Ho, MCED, and others, Adversary No. 02–6237, to void the fourth deed of trust on the property so Dimas could obtain refinancing. Dimas also asserted claims for misrepresentation, negligence, interference with prospective economic advantage, among others. Berliner Cohen conducted discovery and an analysis of the claims against MCED. To facilitate a prompt refinance, in July 2002, Dimas and MCED entered into a stipulation that allowed MCED to submit a demand in escrow for $250,000 and to pursue the balance as an unsecured claim in the chapter 11 case. Pursuant to the stipulation, the parties reserved all other claims. Rakitin now disputes that Dimas authorized counsel to enter into the stipulation. MCED reconveyed the fourth deed of trust upon execution of the stipulation. Dimas thereafter voluntarily dismissed the complaint against John Ho and MCED on September 11, 2002. The proceeding having been dismissed, the clerk's office closed the file the next day. Berliner Cohen subsequently submitted an application for default judgment against John Ho. However, the court declined to enter the default judgment because the adversary proceeding already had been voluntarily dismissed. In October 2002, Berliner Cohen obtained an amended order of dismissal to reflect that only MCED, and not Ho, was dismissed from the adversary proceeding. Ho an-

swered the complaint on January 29, 2003. Through inadvertence, the clerk's office did not reopen the file because of the entry of the dismissal.

Berliner Cohen substituted in as counsel for Dimas and defended the pre-petition lawsuit by Snyder in Santa Clara County Superior Court. Dimas prevailed in a motion to expunge the lis pendens and obtained an attorneys' fee award. It also obtained an agreement from Snyder to dismiss the action. Notwithstanding the removal of the fourth deed of trust and the lis pendens, Dimas could not obtain financing.

Dimas failed to timely make the $3.285 million escrow deposit in accordance with the terms of the stipulation with IGL, and, on September 9, 2002, the court granted relief from the stay to allow IGL to foreclose. On September 10, 2002, Lewis conducted a foreclosure sale of the property under the third deed of trust. On the date of the foreclosure sale, Dimas tendered to the trustee's agent $150,000, an amount it estimated was sufficient to exercise the equity of redemption under the third deed of trust. The trustee's agent rejected the tender, stating that the payoff demand was over $3.3 million because the beneficiary had cured the defaults on the senior deeds of trust and was adding those amounts to the obligation secured by the third deed of trust. Lewis acquired the property by credit bidding $3,015,000, the undisputed portion of the secured debt. After the foreclosure sale took place, Lewis sought to obtain assignments of the fractionalized interests in the first trust deed. Lewis successfully recorded the final subdivision map before the November 17, 2002 expiration date. He also filed an unlawful detainer action to have Ms. Rakitin evicted from the property, where she had been living.

On November 18, 2002, Berliner Cohen commenced on behalf of Dimas an adversary proceeding against IGL, MCED, John Ho, and others, Adversary No. 02–54453, to set aside the foreclosure sale and recorded a lis pendens on the property. The litigation was very acrimonious. Berliner Cohen successfully defended two motions to dismiss the proceeding. Lewis filed a motion to expunge the lis pendens, asserting that Lewis had cured the defaults on the first and the second deeds of trust and included those amounts in his payoff demand. Accepting Lewis' undisputed representations that he had cured the defaults on the senior liens, the court granted Lewis' motion to expunge the lis pendens on the property.

During the course of discovery by Berliner Cohen in the adversary proceeding, Dimas learned that Lewis did not actually make any advances to cure the defaults on the first and the second deeds of trust before the foreclosure sale took place. Upon Dimas' motion for summary adjudication, the court determined that the trustee failed to comply with the strict statutory requirements for credit bidding because Lewis had overstated the amount of the debt. In so doing, Lewis precluded Dimas from exercising the equity of redemption prior to the foreclosure sale. The court granted partial summary adjudication in Dimas' favor.

Ms. Rakitin became increasingly impatient with the pace of the wrongful foreclosure litigation. She insisted that Berliner Cohen pursue theories that were applicable to the earlier foreclosure sale but not relevant to the current litigation. Rakitin retained personal counsel, Steven Finley, in 2003 to facilitate communications with special counsel, to assist with legal research, and to urge special counsel to file another motion for summary adjudication. Snyder paid Finley's retainer on behalf of

Rakitin. Rather than facilitate communication, however, Finley's involvement appeared to exacerbate the difficulty of an already challenging engagement. It added an additional layer of communication, much of which constituted an exchange of ad hominem accusations. For unknown reasons, Dimas declined to have Finley substitute as counsel for Dimas at that time.

Berliner Cohen filed on Dimas' behalf a second motion for summary adjudication in February 2004. After conducting two hearings on the motion and requesting the submission of supplemental briefs, the court found that Dimas' tender on the date of the foreclosure sale was sufficient, that the trustee's refusal of the tender was wrongful and effectively denied Dimas the right to exercise the equity of redemption, and that, as a matter of law, the trust deeds could not be merged because the intervening second deed of trust was held by a different party. The court granted partial summary adjudication on Dimas' claim for relief based on redemption, set aside the foreclosure sale, restored title to the property to Dimas, but reserved ruling on damages and other issues. The court set the matter for trial in January 2005.

After title to the property was restored to Dimas, Lewis renewed his motion for relief from stay because the status quo had been restored, i.e., the trust deeds remained in default. The court consolidated the relief from stay proceeding with the adversary proceeding for purposes of trial. In January 2005, Dimas and Lewis participated in a judicially supervised settlement conference. Following a two-day settlement conference and extensive negotiations, the parties entered into a settlement of the adversary proceeding that was premised on the formation of a new limited liability company to develop the property. The concept was that the new limited liability company would procure financing that would pay off the compromised obligation to Lewis, and Lewis and Dimas would share the proceeds from the sale of the developed lots. Berliner Cohen prepared the settlement agreement. The settlement was never consummated, however, in part because Lewis could not obtain lender approval of a mutually acceptable project manager. In an effort to bridge the impasse, Lewis proposed to serve nominally as project manager but delegate his duties to Peter Rakitin. However, Ms. Rakitin refused, asserting that Lewis was enlisting Dimas' participation in defrauding the bank. She urged Berliner Cohen to assert bank fraud against Lewis, but it declined because full disclosure of the LLC's operations would be made to the bank.

Dimas and Lewis reconvened to discuss alternative proposals. After extensive negotiations over a period of time, the parties entered into a second settlement agreement. The second settlement provided that Lewis would relinquish his security interest in the property upon receipt of $3.1 million from the proceeds of a loan that Dimas would obtain. Lewis would receive an additional $900,000 from the proceeds of the sale of the lots, but he refused to subordinate to a new lender, necessitating a carve-out from the new lender's security. Berliner Cohen expended considerable effort addressing the carve-out, which was a non-standard term. If Dimas failed to pay the initial installment by a date certain, Lewis would receive title to the property upon payment of $1.8 million to Dimas. The parties subsequently negotiated several extensions and a reduction in the payoff amount to Lewis. Nonetheless, Dimas failed to procure a loan that enabled it to timely perform under the second settlement agreement. Upon Dimas' failure to timely perform, Lewis deposited $1.8 million in escrow. In

accordance with the terms of the second settlement agreement, the $1.8 million was disbursed to Dimas in October 2005, and it conveyed title to the property to Lewis. On November 13, 2006, Dimas confirmed a chapter 11 plan that provides for the distribution of the proceeds of the second settlement agreement. It is anticipated that the estate will have a surplus that will be distributed to the members of Dimas after creditors are paid.

Throughout the settlement negotiations, there was substantial disagreement between Berliner Cohen and Dimas over how best to proceed. There was also internal disagreement among the members of Dimas. The attorney client relationship eroded over the course of this difficult representation. Berliner Cohen withdrew from representation as special counsel to the debtor by order dated January 4, 2006. Finley has substituted in as special counsel for Dimas to try the claims against MCED.

Berliner voluntarily reduced its fees by $50,000 in December 2003 in order to reduce the accounts receivable on its books. It has filed four fee applications that seek approval of compensation and expense reimbursement in the amounts set forth below.

| Application | Time Period | Fees | Costs |
|---|---|---|---|
| 1st Interim | 04/11/02–10/31/02 | 73,568.00 | 5,571.27 |
| 2nd Interim | 11/01/02–02/28/05 | 424,318.00 | 18,262.88 |
| 3rd Interim | 03/01/05–10/31/05 | 180,284.00 | 5,855.85 |
| 4th & Final | 11/01/05–03/31/06 | 49,503.50 | 4,657.15 |
| TOTAL | | $727,673.50 | $34,347.15 |

Rakitin has lodged voluminous objections to Berliner Cohen's fees, asserting generally that the fees are patently unreasonable and that the applicant has failed to demonstrate that its services were necessary or conferred a benefit on the estate.

The court has previously authorized that Berliner Cohen may be paid $496,789.40 in compensation and $22,454.38 in expenses reimbursement on an interim basis. To date, fees in the amount of $230,884.10 and costs in the amount of $11,892.77 remain outstanding.

*LEGAL DISCUSSION*

■ Section 330 of the Bankruptcy Code provides that the court may award to a trustee, an examiner, or a professional person employed under §§ 327 or 1103 reasonable compensation for actual, necessary services rendered and reimbursement of actual, necessary expenses. In determining the amount of reasonable compensation, the court considers the nature, extent, and value of the professional's services, taking into account all relevant factors, including whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case and whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. 11 U.S.C. § 330(a)(3). The applicant bears the burden of establishing entitlement to an award and demonstrating that the fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

When the applicant undertook this representation, there was no guarantee of success and a substantial risk of non-payment. This case involved complex real estate litigation invoking a difficult area of California non-judicial foreclosure law. This proceeding has presented particular challenges to the lawyers for the parties as well as for the court. Having presided over multiple hearings on a motion to expunge lis pendens, two dismissal motions, a motion for preliminary injunction to enjoin a sale of the property by Lewis, and

two motions for summary adjudication in which special counsel was involved, it appears that, throughout this litigation, the applicant produced a quality work product, acted professionally, and vigorously advocated the interests of its client. The adversary proceeding progressed at an appropriate pace considering discovery and research conducted.

The time records reflect extensive discussions and consultations with Dimas' managing member, Ms. Rakitin. After the disposition of each motion, the time records also reflect that special counsel worked with its client to develop the strategy going forward as the case evolved. At many times during the litigation, the situation was fluid and required a creative, resourceful approach in response. It appears that special counsel was quite candid in assessing the weaknesses, as well as the strengths, of Dimas' case. The client and the estate benefitted from the expertise of special counsel. While the litigation was contentious and the engagement arduous, the applicant also had the benefit of a client representative that was well-informed, sophisticated, proactive, and engaged in developing the strategy for the litigation. At the same time, Dimas' managing member was recalcitrant and very demanding. She micromanaged every aspect of the litigation and required an inordinate amount of attention. As evidenced by the objections to the applicant's fee applications, where special counsel's advice was not well received, Rakitin would assert that the communication was unnecessary, unsolicited, and not helpful. Complex litigation is costly, and this case is no exception. At this juncture, Dimas has consummated a settlement and confirmed a plan that will result in full payment of all allowed claims against the estate. All of this would not have been possible without the efforts of special counsel.

Having reviewed the applications, the objections by Rakitin, and the replies by the applicant, the court concludes that the applicant's services have conferred a substantial benefit to the estate, and the applicant has sufficiently demonstrated so. The court will now address the more specific objections.

### A. Compensation for Services That Are Inadequately Described Is Denied Without Prejudice

It is incumbent on the applicant to describe the services performed in sufficient detail to enable the court to make a meaningful assessment whether those services were actual, necessary, and beneficial to the estate and whether they were performed within a reasonable amount of time. Paragraph 13 of the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the United States Bankruptcy Court, Northern District of California ("Fee Guidelines") provides that each time entry should identify, at a minimum, the person performing the services, the date, the services performed, and the subject matter involved. To enable the court to determine whether the services are compensable, the timekeeper should identify the other party to the conference, meeting, telephone call, or correspondence as well as the subject matter of the research, analysis, or other task. Where the time entry omits some critical element describing the services performed, the court is unable to determine whether the services were actual and necessary and whether the compensation sought is reasonable. Consequently, compensation for those deficient entries is not allowable. The time entries for which the descriptions are inadequate are set forth in Exhibit 1 attached hereto. The fees attributable to those entries total $7,305 and are disallowed without prejudice to resubmission with amplified detail.

■ In general, time entries containing such a vague characterization as "attention to" are not compensable when they fail to sufficiently describe the task being performed because it is unclear precisely what task the timekeeper is doing. However, where the time entry specifically identifies the activity, such as those set forth in the table below, and the amount sought is reasonable, compensation for those services will be allowed.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 06/05/03 | J. Dworak | Attention to responding to motion to expunge lis pendens. | 4.90 | 1,666.00 |
| 01/26/04 | J. Dworak | Attention to preparing pleadings for motion regarding failure of Andy Lewis to pay money to cure the first and second deeds of trust. | 2.90 | 1,015.00 |
| 02/23/04 | J. Dworak | Attention to filing motion for summary judgment. Review and revise pleadings and declaration. Review changes in declaration made by Professor Martens. Discuss filing and notices. | 4.90 | 1,715.00 |
| 02/24/04 | J. Dworak | Attention to review of pleadings and motion in order to prepare for drafting detailed letter to Al Reuter, Javed Ellahie and Mrs. Rakitin in the event the motion to set aside trustee's deed is successful. | 1.90 | 665.00 |
| 11/11/04 | J. Dworak | Attention to review and preparation of witness list necessary for the Pretrial Conference Statement. | 3.90 | 1,365.00 |
| 12/17/04 | J. Dworak | Attention to following up on items asked about during meeting including research on the damage claim. Telephone call to Adrienne to discuss research. | 2.00 | 700.00 |

## B. Clerical Services Are Not Compensable

■ Services that are clerical in nature are not properly chargeable to the bankruptcy estate. They are not in the nature of professional services and must be absorbed by the applicant's firm as an overhead expense. Fees for services that are purely clerical, ministerial, or administrative should be disallowed. *Missouri v. Jenkins,* 491 U.S. 274, 288 fn. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Sousa v. Miguel,* 32 F.3d 1370, 1374 (9th Cir.1994). Paragraph 18 of the Fee Guidelines expressly provides that time spent performing administrative tasks is not compensable.

■ Some of the services performed by the applicant, such as indexing, organizing, and copying documents, conducting PA-CER searches to locate an order or other pleading, uploading pleadings to CM–ECF, and filing pleadings, constitute administrative tasks that are purely clerical in nature. The time entries for these clerical services total $7,161 and are set forth in Exhibit 2 attached hereto. Compensation for these entries is disallowed.

## C. Periodic Increases in Hourly Rates Are Permissible

■ Rakitin has objected to Berliner Cohen's periodic increases in hourly rates. Where counsel bills the estate on an hourly basis, it is contemplated that there will be periodic upward adjustments of the hourly rates to keep pace with the market. Moreover, the fee agreement attached to the employment application expressly discloses the hourly rates "at this time" and

states that the billing policies and procedures "are subject to change." This objection is overruled.

### D. *Project Categories Exceeding $20,000 Are Permissible*

Rakitin has objected to Berliner Cohen's fee applications to the extent that the project categories exceed $20,000. Although the District's Fee Guidelines provide that "[t]he maximum amount that should be included in a single category should generally be $20,000," it provides further that "[t]his cap may be exceeded where further breakdown is impractical." In the exercise of its discretion, the court will allow the applicant to bill in project categories that exceed $20,000. Any further breakdown is impractical and unnecessary. Having reviewed the applications, it appears that the project categories are appropriate, and that the applicant's narratives are sufficiently detailed, given the sensitive nature of contested litigation, to provide an adequate understanding of the services rendered.

### E. *Management of Dimas' Funds in the Applicant's Trust Account Is Compensable Unless Clerical*

Rakitin has objected to the time expended by the applicant in connection with the administration of the settlement proceeds that were deposited into the applicant's trust account. Based on a review of the relevant time entries, it appears that compensation for some of the services is allowable. Where the entries involve meetings or discussions with Rakitin or other estate professionals to ensure that Rakitin receives funds that were requested, the services are professional in nature and are compensable. Compensation for only those administrative services that are purely clerical in nature is disallowed. Those time entries total $337.50 and are set forth in the table below.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 11/23/05 | Dworak J. | Meeting with Office Administrator at Berliner Cohen to have employees necessary to process trust payments return to the office to meet the last minute request of Mr. Ellahie on behalf of Mrs. Rakitin to get a check to her before Thanksgiving. Obtain necessary appraisals of staff overtime payment if necessary to be made because of request of Mrs. Rakitin. | 0.70 | 262.50 |
| 11/23/05 | J. Dworak | Attention to answering questions by administrative personnel regarding when and how money should be paid. | 0.20 | 75.00 |
| | | **TOTAL** | **0.90** | **337.50** |

In addition, Rakitin objected to an entry, which is set forth below, in which the applicant combined compensable professional services in meeting with the client with non-compensable clerical services in connection with Dimas' funds in the applicant's trust account.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 11/23/05 | J. Dworak | Obtain and process documents for issuance of checks. Meeting with Mrs. Rakitin regarding payment and Finley letter. | 0.80 | 300.00 |

A total of $37.50 will be deducted from this entry for the services related purely to the administrative function. Consequently, a total of $375 will be disallowed for services related to estate assets in the applicant's trust account.

## F. Compensation for Participation by Multiple Attorneys in Hearings Is Disallowed Without Prejudice

 Rakitin has objected to the time entries for which multiple attorneys participated in meetings, conferences, or hearings. Normally, it is appropriate for only one attorney from a firm to attend a meeting, conference, or hearing. Otherwise, unnecessary duplication of services results in excessive billings that are not compensable. § 330(a)(4). Where, however, the services involve meetings or conferences with the client, an inference arises that the client consented at the time, and in fact desired, the participation by more than one attorney. Many of the time entries to which Rakitin objects are meetings with Ms. Rakitin, the managing member of Dimas. There certainly are circumstances in which the contribution of more than one attorney is valuable to the client and to the estate, particularly in complex litigation. One example is the participation of two attorneys in the judicial settlement conference. If the client deemed it objectionable for more than one attorney to bill time for a particular meeting or conference, it is incumbent on the client to voice its objection at the time of the meeting or conference. There is no evidence in the record that Rakitin objected to the participation by more than one attorney in the meetings or conferences in which she was present. Not having done so at the time, the objections are now waived. Compensation for the participation of multiple professionals in meetings or conferences in which the client participated is allowed.

 Where the client did not participate in the conference or hearing, however, the time is not compensable. The time entries for services in which more than one professional participated without the client are set forth in the table below. For each of the time entries, at least one other professional in the firm who has a lower billing rate participated in the same conference. Where the attorney with the lower billing rate billed fewer hours to the hearing than the attorney with the higher rate, only the number of hours during which there was an overlap in services is disallowed. Absent an explanation, compensation for participation by multiple attorneys is not allowable. The fees attributable to these services total $1,244 and are disallowed without prejudice to resubmission with an explanation of the necessity of the services.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/31/03 | J. Dworak | Attend hearing in Bankruptcy Court related to motion to dismiss. | 1.60 | 544.00 |
| 03/19/04 | J. Dworak | Attend hearing on motion for summary judgment. | 1.10 | 385.00 |
| 04/23/04 | J. Dworak | Attend hearing on motion for summary judgment. | 0.90 | 315.00 |
| | | **TOTAL** | 3.60 | 1,244.00 |

## G. Compensation for Unauthorized Discussions with Accountant Is Disallowed

 Rakitin objected to all the time entries related to the applicant's communications with the accountant for the estate, Al Reuter, asserting that these discussions were unauthorized. However, Dimas retained the services of Berliner Cohen as special litigation counsel to assist it in resolving a complex real estate dispute. In pursuit of the broad objectives of the

litigation, it was both reasonable and necessary for the applicant to engage in discussions with other estate professionals to gather information, to weigh alternative strategies, and to conduct an analysis, including a financial analysis. Absent an explicit instruction to refrain from communicating with Reuter, it was reasonable for the applicant to do so.

In a letter to Ms. Long of Berliner Cohen dated July 23, 2002, Ms. Rakitin instructed that counsel should not communicate with Mr. Reuter but instead should communicate directly to the client. As a result of that written directive, communications with Mr. Reuter made after the date of that letter, July 23, 2002, were expressly unauthorized by the client and are not compensable from the estate. Until the date of that letter, however, the services involving communications with Reuter were reasonable and compensable. After that date, unless the communication was at the direction of the client, the services were unauthorized. The time entries relating to communications with Reuter after the client had withdrawn authority to communicate directly are set forth in Exhibit 3 attached hereto. The fees incurred in this category total $3,047 and are disallowed.

**H.** *Fees for Non–Compensable Services That Are Clumped in Same Entry With Compensable Services Are Disallowed*

■ Rakitin has objected to some of the applicant's time entries on the basis that they are clumped. In seeking compensation, attorneys should not clump disparate services in a single time entry. *See In re Dutta,* 175 B.R. 41, 46–47 (9th Cir. BAP 1994). Clumping renders it difficult to determine whether each task was completed within a reasonable amount of time. In general, each discrete task should be separately described in its own time entry. *See id.;* Fee Guidelines, Paragraph 14. Based on a review of the time entries to which Rakitin objects on the basis of clumping, those entries do not appear, in fact, to involve unrelated, disparate services. Instead, the services appear generally to relate to the same subject matter of the litigation for which Berliner Cohen was employed to prosecute on behalf of Dimas. For example, the services in a single time entry appear to relate to the same hearing, motion, discovery, or other issue, and the descriptions are sufficient for purposes of judicial review. Compensation for the services is allowable.

■ Where services that are non-compensable are clumped with services that are otherwise compensable, compensation for the services that are non-compensable is disallowed. For example, a portion of the time entries set forth in the table below is disallowed on the basis that clerical services are included.

| Date | Timekeeper | Description | Hours | Reduction | Amount |
|------|-----------|-------------|-------|-----------|--------|
| 06/03/02 | D. Miller | Analysis regarding subpoenas. Draft document requests to Bank of America, Access Bank and Ridge View Investment, Inc. Draft Information Request Form to Castle Copy Service regarding subpoenas to same. Draft fax cover letter to Castle Copy Service regarding same. | 1.90 | –0.20 | 28.00 |

| | | | | | |
|---|---|---|---|---|---|
| 06/04/02 | D. Miller | Review and revise document request. Fax same to Castle Copy Service. | 0.90 | –0.20 | 28.00 |
| 06/10/02 | D. Miller | Organize documents filed in the underlying matters. Review subpoenas to Bank of America, Access Bank and Ridge View Investment from Castle Copy Service. Organize Dan Snyder documents in chronological order. Draft index regarding same. | 2.60 | –2.10 | 294.00 |
| 07/11/02 | D. Miller | Analysis regarding preparation for hearing. Research address, telephone number, and fax cover letter number for Michale Jeng and Robert Lu. Draft subpoenas to Mr. Jeng and Mr. Lu. Attention to organization of exhibits for evidentiary hearing. | 3.40 | –0.30 | 42.00 |
| | | **TOTAL** | | | **392.00** |

A portion of the time entries set forth in the table below is also disallowed on the basis that they include time billed for conferences with Al Reuter, the estate's accountant, after the debtor's managing member directed the applicant on July 23, 2002 not to communicate with Mr. Reuter.

| Date | Timekeeper | Description | Hours | Reduction | Amount |
|---|---|---|---|---|---|
| 06/27/02 | C. Long | Analysis regarding options within the time frame allowed by court; telephone call with Al Reuter regarding sale and current outstanding debts; conference with Kristin Genc regarding amendments recommendations by Mr. Ellahie. | 1.10 | –0.30 | 51.00 |
| 06/28/02 | K. Genc | Telephone call to Al Reuter re changes to letter of intent; email Javed re same; email Al Reuter re same; fax re revised letter of intent. | 0.60 | –0.30 | 57.00 |
| 07/09/02 | J. Dworak | Telephone call from Al Reuter. Telephone call to Al Reuter. Analysis re: status. Outline issues. Telephone call to Adrienne Rakitin. | 1.70 | –0.40 | 130.00 |
| 07/29/02 | J. Dworak | Research status of motions. Outline issues to be addressed at hearing. Telephone call to Al Reuter. | 1.90 | –0.20 | 65.00 |
| 09/11/02 | C. Long | Analysis regarding contempt proceedings, escrow account, and further action; conference call with Mr. Reuter regarding the same. | 1.10 | –0.30 | 51.00 |
| 03/19/03 | J. Dworak | Telephone call to Al Reuter. Discuss settlement possibilities. Determine progress with discussions with Andy Lewis. Review | 4.70 | –0.50 | 170.00 |

issues on how to proceed. Determine best how to proceed.

| | |
|---|---|
| **TOTAL** | 524.00 |

A total of $916 is disallowed for services that were inappropriately clumped.

### I. *Compensation for Only Those Services That Exceed the Scope of Employment Is Disallowed*

■ Rakitin has objected to several categories of services on the basis that they exceed the scope of Berliner Cohen's employment as special litigation counsel and invade the province of general bankruptcy counsel. The services include commenting on Dimas' proposed plan of reorganization, objecting to Investment Grade Loans' motion for relief from stay, discussions with Mark Bostick, counsel for unsecured creditor Suzanne Decker, Trustee of the bankruptcy estate of Adrienne Rakitin, and discussions with a prospective buyer and lender for the property. Rakitin also objects to time spent addressing the tax implications of the settlement agreement. The time entries for these services are set forth in Exhibit 4 attached hereto. In addition, Rakitin objects to the applicant's services rendered in connection with the adversary proceeding filed against IGL, Lewis, MCED, and John Ho to set aside the foreclosure sale, Adversary No. 02–5453, with the Superior Court action against Snyder, and with the unlawful detainer action against Ms. Rakitin on the basis that these services exceed the scope of employment.

The scope of Berliner Cohen's appointment was broad. It was appointed as special counsel to represent the debtor in and to handle all aspects of litigation involving breach of contract, fraud, and a complex real estate contract dispute. The property was in foreclosure proceedings at the time Dimas retained Berliner Cohen. It was also encumbered by a disputed fourth deed of trust and a lis pendens. The entire bankruptcy case has been driven by the litigation involving the property, which is the debtor's sole asset. Resolution of the disputes with the holders of the junior encumbrances, MCED and Snyder, was the only way to refinance the senior encumbrances. In turn, resolution of the dispute with the senior secured creditor was the only circumstance under which the chapter 11 case would move forward. The real estate issues were at the center of the case and dictated the course of it. Berliner Cohen was charged with resolving the debtor's claims with respect to the property. It did not act without authority. On the contrary, it appeared to have been closely and actively monitored by the managing member of the debtor. Moreover, general bankruptcy counsel is responsible for and capable of ensuring that there is no duplication of services when the assistance of special counsel is enlisted. The court will address each of the categories of services to which Rakitin has objected.

### 1. Plan of Reorganization

In this case, the terms of any proposed plan would be dictated by a disposition of the property or the proceeds of a settlement with respect to the property. The applicant's services were essential to structuring the terms of a plan in this case. All of the applicant's time entries concerning the plan involve conferences with the managing member of Dimas. An inference arises on that basis that the debtor was aware of, consented to, and requested the services. Any objection to the services on the basis that they were beyond the scope of employment is waived.

### 2. Discussions with Unsecured Creditor

It appears from the time entries that the applicant was responding to inquiries initiated by Mark Bostick, counsel for unsecured creditor Suzanne Decker, Trustee of the bankruptcy estate of Adrienne Rakitin. It also appears that either Ms. Rakitin or general bankruptcy counsel was informed and aware of the communications with Bostick at the time they occurred. Given that this was a litigation driven case, special counsel was likely as aware, if not more, than general counsel of the status of the case and its impact on unsecured creditors. These services appear authorized and reasonable and are allowed.

### 3. Motion for Relief from Stay

As special litigation counsel specializing in real estate issues, assisting general counsel in preparing opposition to a motion for relief from stay is clearly within the scope of the applicant's employment. The applicant prepared a portion of the points and authorities in opposition to the motion for relief from stay. It appears that its assistance was requested and coordinated with general counsel, and the stay proceeding was ultimately consolidated for trial with the adversary proceeding. Moreover, the applicant engaged in discussions with the managing member of the debtor concerning the stay motion, so she was aware of their involvement and had the opportunity to voice her opposition at that time but apparently declined to do so. The services appear to be within the scope of employment, and compensation therefor is allowed.

### 4. Discussions with Prospective Brokers, Buyers, and Lenders

Rakitin has objected to time entries for discussions with a group of physician investors interested in acquiring the property, Laroy Smith, and Edsel Williams concerning a proposed refinance of the debt on the property. Dimas engaged Berliner Cohen to assist it in resolving serious problems involving its interest in the property. Refinancing the debt and sale of the property were potentially viable avenues of resolving those problems. Moreover, the property was involved in contentious litigation. Any potential lender or purchaser would want to discuss the status of and prospects of prevailing in the litigation with the attorneys most knowledgeable as part of its due diligence. These services appear reasonably to be within the scope of the applicant's appointment and are compensable.

### 5. Tax Implications of Settlement Agreement

Rakitin has objected to a communication by the applicant to other estate professionals and the members of Dimas concerning the potential tax implications of the settlement agreement with Lewis. Diligent counsel would highlight to the client's attention any issue of concern that it identifies or that comes to its attention, even if outside its area of expertise and communicated with a disclaimer. While not specifically tax counsel, Berliner Cohen was well within its scope of employment to review, comment upon, and critically analyze the issues raised by the settlement agreement that resolved the litigation for which it served as primary counsel. This communication is within the applicant's scope of employment, and compensation therefor is allowed.

### 6. Adversary Proceeding to Set Aside Foreclosure Sale

Rakitin has asserted that the applicant's services related to the adversary proceeding against IGL, Lewis, MCED, and John Ho to set aside the foreclosure sale ex-

ceeded the scope of employment. The services contemplated at the time of appointment included:

- To provide applicant with legal advice regarding any claims for contractual breach and fraud applicant may have against its creditors;
- To take all necessary steps to determine if there is liability on the part of applicant's creditor for breach of contract and fraud;
- To investigate and institute litigation, through trial and judgment, and/or settle or compromise any such claim on behalf of applicant.

This scope of employment is very broad and is sufficiently broad to encompass the proceeding to set aside the foreclosure sale. This objection is not well taken and is overruled.

### 7. Superior Court Action by Snyder

Rakitin has asserted that the services related to defending the pre-petition lawsuit by Snyder in Santa Clara County Superior Court exceeded the scope of employment of special counsel. The employment application acknowledged that the debtor was at that time "involved with on going litigation involving breach of contract, fraud and a real estate contract dispute." It specifically disclosed the action by Snyder pending in Santa Clara County Superior Court. This ob-jection based on the scope of employment is not well taken and is overruled.

### 8. Unlawful Detainer Against Ms. Rakitin

 Rakitin has objected to $3,321.50 in fees related to the unlawful detainer action that Lewis prosecuted against Ms. Rakitin after the foreclosure sale on the property. The unlawful detainer action resulted in Ms. Rakitin's removal on Christmas eve 2002 from the property where she had been residing. Rakitin also objects to an additional $642 incurred in connection with Ms. Rakitin's vacating the property after title was transferred to Lewis in October 2005. These services exceeded the scope of the applicant's appointment as special counsel. Moreover, services that benefit only the principal of the debtor but not the debtor are not chargeable to the estate. *In re Office Products of America, Inc.,* 136 B.R. 964, 972 (Bankr.W.D.Tex.1992). Dimas did not benefit from these services, so compensation for them in the amount of $3,963.50 is disallowed.

There is only a limited number of other time entries, which are set forth in the table below, that appear to exceed the scope of Berliner Cohen's employment. These time entries total $456, and compensation for them is disallowed.

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 05/29/02 | M. Isola | Analysis re Chapter 11 issues for paying off creditors. | 0.30 | 67.50 |
| 07/25/02 | C. Long | Receipt and review of monthly operating report. | 0.30 | 51.00 |
| 02/07/05 | J. Dworak | Receive, review and investigate Adrienne's claim to a priority payment from the Estate of Dimas in excess of $70,000. | 0.90 | 337.50 |
| | | TOTAL | 1.50 | 456.00 |

### J. Services That Are Unnecessary and Do Not Benefit the Estate Are Not Compensable

 Rakitin has objected to several categories of services that it asserts were unnecessary and did not benefit the estate. To establish its entitlement to compensation, counsel must demonstrate that the services were necessary or reasonably likely to benefit the estate at the time they were rendered. In re *Mednet*, 251 B.R. 103, 108 (9th Cir. BAP 2000). The necessity of the services is dictated in part by the reasonableness of the request in view of the governing law and the probability of success. See *Unsecured Creditors' Comm. v. Puget Sound, Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir.1991). The court will address the categories of services to which Rakitin has objected on the basis of the necessity of the services.

### 1. Amendment to Complaint

 The applicant incurred fees to prepare an amended complaint that Rakitin asserts was never filed. These entries relate to a proposed amendment to the complaint against John Ho and MCED to void the fourth deed of trust in Adversary No. 02–6237. The amendment was never filed, and the proceeding was voluntarily dismissed. The time entries for these services are set forth in the table below.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 06/03/02 | C. Long | Revisions to Complaint based on meeting with Adrienne Rakitin. | 0.90 | 153.00 |
| 06/07/02 | C. Long | Final preparation of Amendment to Complaint to Complaint for Damages. | 0.60 | 102.00 |
| | | TOTAL | 1.50 | 255.00 |

Since the estate did not benefit from these services, the fees in the amount of $255 are disallowed.

### 2. Application for Default Judgment

 Rakitin asserts that the applicant incurred fees to prepare an application for default judgment that was unnecessary because the adversary proceeding had already been dismissed. The applicant, on behalf of Dimas, voluntarily dismissed the adversary complaint against MCED and John Ho, Adversary No. 02–5237, on September 11, 2002. Thereafter, the applicant filed an application for default judgment against defendant John Ho. The time entries for these services are set forth in Exhibit 5 attached hereto. After the court declined to enter the default judgment, the applicant amended the dismissal to reflect that only MCED, and not Ho, was dismissed from the adversary proceeding. Ho answered the complaint on January 29, 2003. In any event, preparation of the application for default judgment against Ho did not benefit the estate first, because the adversary proceeding had been dismissed, and secondly, because Ho answered the complaint. Fees totaling $3,695 incurred in connection with these services are disallowed.

### 3. Participation in Fee Hearing for Education Purposes

Ms. Long of Berliner Cohen attended a fee hearing in the bankruptcy court on September 17, 2002, incurring $255 in fees. There was no hearing on fees in this case on that date. Rakitin contends that this participation was for the purpose of educating the attorney about the bankruptcy court's fee procedures. Compensation for this time from the estate is disallowed.

#### 4. Contribution to Santa Clara University Law Clinic

▮ Rakitin has objected to the applicant's services in connection with attempts to persuade her to comply with an agreement to make a contribution to the Law Clinic at Santa Clara University School of Law in exchange for Professor Mertons' expert testimony in the adversary proceeding. The time entries are set forth in the table below. This activity is similar to counsel's collection efforts, which are administrative in nature and not compensable from the estate. Fees in the amount of $455 incurred in this collection effort are disallowed.

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 01/31/05 | J. Dworak | Draft electronic message to Steven Finley regarding status of offer made by Adrienne and Dimas LLC to make contribution to Santa Clara University Law Clinic will be honored but Adrienne and to what degree. | 0.70 | 245.00 |
| 01/31/05 | J. Dworak | Draft electronic message to counsel for Adrienne Rakitin to determine whether promise made to Professor Mertons by Adrienne to make contribution to legal clinic will be honored. | 0.60 | 210.00 |
| | | **TOTAL** | 1.30 | 455.00 |

#### 5. Contacting NBC Affiliate

▮ The applicant incurred $105 in legal fees on December 22, 2003 to contact the local NBC affiliate concerning Ms. Rakitin's plight in an effort to garner public support. Rakitin has objected to compensation for this time expended on the basis that the services were not authorized and were unnecessary. Ultimately, the contact did not result in any sympathy for Ms. Rakitin or any favorable press coverage on behalf of Dimas. These services did not result in any benefit to the estate, and compensation therefor is disallowed.

#### 6. Motion to Seal Documents

▮ Rakitin has objected to $686 in fees incurred to prepare a motion to seal from the public record the declarations filed by Rakitin in support of its objections to Berliner Cohen's fee applications. Berliner Cohen asserted that the declarations were scurrilous and sullied the firm's reputation. Rakitin objected to the motion, and the court denied the motion based on the overriding interest in public access to court records. The motion to seal documents did not benefit the estate, and compensation therefor is disallowed.

#### K. Analysis of Claims Against John Ho and Milpitas Countryside Estates Is Compensable

Rakitin has objected to compensation for services related to analyzing the estate's claims against John Ho and MCED. Rakitin asserts that the services were unnecessary because the adversary proceeding against Ho and MCED had already been dismissed. The time entries are set forth in the table below.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 10/27/04 | J. Dworak | Draft analysis letter regarding proceedings against John Ho and confirm instructions on how to proceed. | 1.80 | 630.00 |
| 10/27/04 | J. Dworak | Review files and investigate the history and the transaction with John Ho. | 3.90 | 1,365.00 |
| 11/30/04 | C. Long | Preparation of letter to Mrs. Rakitin concerning actions and claims against John Ho and discussion with counsel. | 2.30 | 437.00 |
| | | **TOTAL** | 8.00 | 2,432.00 |

Although the complaint against MCED and Ho to void the fourth deed of trust in Adversary No. 02–5237 had been dismissed, MCED and Ho were also defendants in the adversary proceeding against Investment Grade Loans and Lewis, Adversary No. 02–5453, to set aside the foreclosure sale. To date, the claims against MCED and Ho remain unresolved, and the matter is set for trial in February 2007. The services described above are appropriate and are compensable.

Rakitin has also objected to services related to the applicant's negotiations with MCED to remove the fourth deed of trust on the property on the basis that the stipulation had not been authorized by the debtor. The time entries for these services total $1,181.50 and are set forth in the table below. Removal of the MCED deed of trust was necessary to allow any refinance to go forward. In addition to the release of the fourth deed of trust, the stipulation provided that MCED could submit an escrow demand in the amount of $250,000. MCED now asserts a claim in the amount of $467,000, and Dimas disputes that MCED is entitled to a claim even in the amount of $250,000. Whether the applicant was authorized to enter into the stipulation with MCED is one of the factual issues in dispute for the trial set in February. This issue is reserved pending the outcome of that trial.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/10/02 | M. Isola | Analysis of claim to avoid lien of Milpitas for lack of obligation. | 1.00 | 225.00 |
| 07/10/02 | C. Long | Preparation of stipulation regarding removal of the $1.2 million deed of trust. | 1.30 | 221.00 |
| 07/11/02 | M. Isola | Review and revise Stipulation for payment to Milpitas and removal of Deed of Trust. | 0.70 | 157.50 |
| 07/11/02 | C. Long | Receipt and review of revisions by Mr. Reza, conference regarding same, preparation of counter revisions, discussion regarding best way to terminate contracts without waiving rights, discussion with Mr. Ellahie regarding the Order, follow conversations with Mr. Reza, final preparation of Stipulation. | 3.40 | 578.00 |
| | | **TOTAL** | 6.40 | 1,181.50 |

## L. *Disclosure of Confidential Information is Proper*

 Rakitin has objected to Berliner Cohen's disclosure of confidential attorney-client communications in support of its response to Rakitin's objections to its fees. However, there is an exception to the privilege where the communication is "relevant

to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." Cal. Evid. Code § 958. The general rule is that counsel may reveal confidences where it is necessary to get paid or to defend charges of improper conduct. *In re Rindlisbacher,* 225 B.R. 180, 183 (9th Cir. BAP 1998)(*citing United States v. Ballard,* 779 F.2d 287, 292 (5th Cir.1986), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986); *In re Featherworks Corp.,* 25 B.R. 634, 645 (Bankr.E.D.N.Y.1982), *aff'd on other grounds,* 36 B.R. 460 (E.D.N.Y. 1984)). Counsel is released from the duty of non-disclosure where necessary to protect counsel's own rights, such as when counsel's integrity, good faith, authority or performance of duties is questioned. *Rindlisbacher,* 225 B.R. at 183. The client also waives the privilege when it discloses the information, as Rakitin has done here. *Id.* at 184. The court concludes that the disclosure by Berliner Cohen of confidential client communications in this context is proper.

**M.** *There Is No Disqualifying Conflict*

 Rakitin asserts that Berliner Cohen had a conflict of interest and is not entitled to payment of any fees incurred after April 19, 2005, which is over $150,000. During the period of time that Ms. Rakitin was urging Berliner Cohen to assert bank fraud charges against Lewis in connection with the first settlement agreement, Berliner Cohen threatened to withdraw from representation. The bases that Berliner Cohen cited for withdrawal were mandatory withdrawal, because the client was asserting a position without probable cause, and permissive withdrawal, because the client insisted on presenting a claim not warranted by existing law or it was unreasonably difficult to carry out the employment effectively. Berliner Cohen did not withdraw at that time because Ms.

Rakitin indicated that Dimas would oppose withdrawal, and the concerns were resolved when Lewis and Dimas resumed negotiations toward a new settlement.

This argument is a red herring. The cases on which Rakitin relies, *In re McGregory,* 340 B.R. 915 (8th Cir. BAP 2006), and *Ishmael v. Millington,* 241 Cal. App.2d 520, 50 Cal.Rptr. 592 (3rd Dist. 1966), are inapposite to these facts. They deal with the classic case of dual representation of conflicting interests. Rakitin's reliance on Rule 3–310 of the Rules of Professional Conduct of the State Bar of California is misplaced in that the rule also addresses the representation of interests adverse to the client. Berliner Cohen's disagreement with its client over the course to proceed does not rise to the level of a disqualifying conflict of interest. *See People v. Hart,* 20 Cal.4th 546, 604, 85 Cal. Rptr.2d 132, 976 P.2d 683 (1999)(disagreement over reasonable tactical decision is not an irreconcilable conflict), *cert. denied,* 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000); *People v. Memro,* 11 Cal.4th 786, 858, 47 Cal.Rptr.2d 219, 905 P.2d 1305 (1995)(same), *cert. denied,* 519 U.S. 834, 117 S.Ct. 106, 136 L.Ed.2d 60 (1996). Moreover, the disagreement was promptly resolved when Dimas and Lewis returned to the bargaining table. The argument that there is a conflict of interest warranting disgorgement is a trumped up allegation to serve as an expedient tactic to avoid paying Berliner Cohen a substantial portion of the fees earned. There is no disqualifying conflict of interest.

**N.** *Interim Payment from Post–Petition Retainer Was Authorized*

Rakitin has objected to Berliner Cohen's drawdown on a post-petition retainer of $38,000 as an interim payment on Berliner Cohen's first interim fee application. The basis of the objection is that the court's

order awarding the fees expressly authorized payment "from its post-petition income," but the retainer was paid from pre-petition escrow funds that were returned to the debtor. The first interim application specifically requested approval of the post-petition retainer and authority to pay its fees from that retainer. The court issued an Order Approving Interim Application of Special Counsel for Interim Compensation on March 14, 2003. It was clearly understood by all the parties that there is no post-petition income in this case. While there is some confusion resulting from the language in the order, it was clearly the court's intention to authorize interim payment of fees from the post-petition retainer. This objection is overruled.

## O. *Services Allegedly Unauthorized Are Reasonable*

 Rakitin has objected to several categories of services on the basis that Dimas did not authorize the services. Generally, the categories are communications with potential lenders to be secured by the property, with other members of Dimas besides the managing member, and with a potential mediator for the wrongful foreclosure adversary proceeding. The time records for these services are set forth in Exhibit 6 attached hereto. However, the services need not be expressly authorized to be reasonable and within the scope of employment. As previously discussed, it is prudent and within the scope of employment for the applicant to explore the debtor's alternatives with prospective lenders, namely Edsel Williams and Laroy Smith. The applicant also had a duty on the debtor's behalf to provide information and to respond to due diligence inquiries to facilitate a refinance that would solve the debtor's problem.

 With respect to the applicant's communications with Dimas member Peter Rakitin, the client is the debtor, not Adrienne Rakitin. While Adrienne Rakitin may be the managing member of Dimas, counsel owes its professional duties to the entity. Fulfillment of those duties may necessitate communications with the other non-managing members of the LLC, particularly if there is difficulty or a breakdown in communication with the entity's designated representative, in this case, its managing member. These communications appear reasonable and are compensable.

 Finally, with respect to the applicant's communications with a prospective mediator, consensual settlement is favored, and mandatory settlement conferences are required in the Superior Court. Although Dimas had not consented to mediation, it was reasonable for counsel to explore the option. Services related to that pursuit are compensable.

## P. *Fees for Participation in Settlement Conference and Preparation of Settlement Agreements Are Reasonable and Compensable*

 Rakitin has objected to compensation for the applicant's services to participate in the judicial settlement conference and to prepare the first and the second settlement agreements. The entries for these services are set forth in Exhibits A–9 and A–17 to the second interim application, Exhibits A–1 and A–3 to the third interim application, and more specifically in Exhibit 7 attached hereto. The bases for the objection are that the services were unnecessary and duplicative because two attorneys in the law firm participated in the conference and the drafting of the agreements, and the fees are excessive.

Rakitin contends that the recitals that the applicant drafted were unnecessary be-

cause they ultimately were removed from the first settlement agreement. However, a substantial amount of time was devoted to incorporating Ms. Rakitin's proposed recitals to the settlement agreement before the mutual decision was made to omit them altogether. Preparation of the second settlement agreement was made difficult by the carve-out provision and the refusal of Lewis or the new lender to subordinate to the other. The settlement involved not only complex real estate issues but also contentious discord among the parties. Both attorneys were present in the settlement conference, and Rakitin was aware of their participation. Many of the time entries to which Rakitin objected involved conferences with Ms. Rakitin. The first settlement was tenuous, and many of the details were not addressed in the settlement conference, necessitating substantial negotiations during the drafting phase. Although the original settlement was never consummated, it did pave the path for the second settlement that was ultimately reached and that resolved the litigation. Resolution of the litigation fixed the claim of the senior secured lender, dictated the course of the case, and enabled the debtor to confirm a plan. The voluminous declarations filed by the parties demonstrate the complexity and the difficulty of the issues addressed in both the first and the second settlements. The services relating to attendance at the settlement conference and preparation of the settlement agreements appear necessary and reasonable under the circumstances, and the compensation sought therefor is allowed.

### Q. Services Related to Termination of Berliner's Employment and Turnover of Files Are Not Compensable

██ Rakitin has objected to the applicant's fees incurred in connection with the termination of its employment by the debt-

or and addressing related issues, including the turnover of client files. This objection is well taken because the estate derived no benefit from the services. Attorney efforts related to cultivating, negotiating the terms of, nurturing, and ultimately terminating the attorney-client relationship do not constitute client services. Rather, they are administrative functions the cost of which should be borne by the firm as overhead. The time entries for these services total $7,433.50 and are set forth in Exhibit 8 attached hereto. The fees related to the termination of Berliner's employment and the transition of client files are disallowed.

### R. Post–Termination Services Are Not Compensable

██ Rakitin has objected to those fees incurred after the effective date of termination of employment. The applicant was formally relieved of its duties as special counsel to the estate by order effective January 4, 2006. Although there were earlier discussions concerning withdrawal from representation by Berliner Cohen, Dimas and Berliner Cohen apparently were unable to agree to the terms of a stipulation for withdrawal. Although Berliner Cohen expended $1,221.50 in fees to prepare a motion for withdrawal, those fees are disallowed because the motion was not presented to the court for consideration. Instead, the court granted a withdrawal motion on behalf of Berliner Cohen that was prepared by general bankruptcy counsel. Except for fees incurred in preparing the final fee application and the responses to the objections to the applicant's fee, those fees that were incurred after the effective date of withdrawal, January 4, 2006, are disallowed. The time entries for these services, which total $5,778, are set for in Exhibit 9 attached hereto.

**S.** *Preparation of Fee Application and Responding to Objection to Fee Application Are Compensable Services, But Editing Time Records Is Not Compensable*

Rakitin has objected to some of the applicant's fees incurred in the preparation of its fee applications and in responding to the objections to the applications. In particular, Rakitin asserts that compensation for the time entries set forth in the table below, which relate to the applicant's responses to Rakitin's objections to its fees, should be disallowed.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 11/23/05 | J. Dworak | Determine and evaluate proper procedure to be followed based upon the necessity of hiring counsel. Draft pleading regarding notification of employment of counsel. | 0.70 | 262.50 |
| 11/23/05 | J. Dworak | Telephone to associated counsel regarding preparation of pleading. | 0.40 | 150.00 |
| 11/28/05 | J. Dworak | Receive input from outside counsel regarding how to respond to Mr. Finley letter. Evaluate input and dictate a responsive letter which follows up on earlier electronic message. | 0.70 | 262.50 |
| 12/01/05 | J. Dworak | Receive, review and follow up on the opposition filed by Mr. Finley on behalf of Mrs. Rakitin regarding the Fee Application. Meeting to discuss and review follow-up action. Determine action items. | 1.90 | 712.50 |
| 12/06/05 | J. Dworak | Attend hearing on the Third Fee Application of Berliner Cohen. | 1.10 | 412.50 |
| 12/06/05 | C. Long | Attended bankruptcy hearing. | 1.40 | 294.00 |
| 12/06/05 | J. Dworak | Meeting prior to the Fee Application Hearing to go over matters and address and answer questions of counsel regarding the issues raised by Mr. Finley. Thereafter proceed to Bankruptcy Court to attend hearing. | 1.90 | 712.50 |
| 12/06/05 | C. Long | Meeting with counsel regarding hearing. | 1.00 | 210.00 |

The applicant is entitled to receive compensation for the time expended in the preparation of fee applications because attorneys are statutorily obligated to submit a detailed accounting of all services provided to the estate. *In re Smith*, 317 F.3d 918, 927–28 (9th Cir.2002), *cert. denied*, 538 U.S. 1032, 123 S.Ct. 2074, 155 L.Ed.2d 1060 (2003); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 (9th Cir.1985). This includes time expended in connection with attendance at the hearings on the fee applications since an actual hearing is required in this district. Fed. R. Bankr.P. 2002; B.L.R. 9014–1. However, the time the applicant expended to review and edit its time records and to manually project bill is not compensable from the estate. Where the applicant's time entries require revision to conform to the court's standards for submitting fee applications, the editing services are clerical functions that are not compensable, even if they are performed by a professional. *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 485 (D.Utah 1991). The applicant incurred $19,801 in fees to review and edit its time records and to manually divide its time records into project billing categories in order to comply with the court's requirements. Those time entries are set forth in Exhibit 10 attached hereto, and compensa-

tion for these entries is disallowed. The balance of the fees incurred in connection with the preparation of the fee applications is reasonable and is allowed.

■ Applicant's time devoted to responding to Rakitin's objections to its fees is also compensable. Although the Ninth Circuit has rejected a per se rule allowing compensation for fees incurred in litigating a fee application, *In re Riverside–Linden Investment Co.*, 945 F.2d 320, 323 (9th Cir.1991), such compensation is allowable if the applicant demonstrates that the fees are otherwise reasonable and necessary. *In re Smith,* 317 F.3d at 928. Here, the fees incurred in connection with responding to the fee objections also appear reasonable and are allowable. These services are necessary to the administration of the estate because they assist the court and the chapter 11 debtor in fixing the amount of administrative claims against the estate.

### T. *Compensation for Opposition to Motion to Expunge Lis Pendens is Allowed*

■ Rakitin has objected to $21,228.50 in fees related to services in connection with opposing Lewis' motion to expunge the lis pendens that Dimas recorded after the foreclosure sale. The basis for Rakitin's objection is that Dimas did not prevail on the motion. However, counsel is not a guarantor of success in the case, and the reasonableness of compensation for services provided is not tied to whether the debtor prevailed. *In re Interstate Dept. Stores, Inc.,* 128 B.R. 703, 706 (Bankr.N.D.N.Y.1991). Here, the consequence of expungement was that Lewis would be able to sell the property, and Dimas would be unable to restore title even if it were able to set aside the foreclosure sale. The ruling on Lewis' motion to expunge the lis pendens was based on the discovery conducted as of the time of the

hearing on the motion. As the facts were developed, the court subsequently issued a preliminary injunction that precluded Lewis from selling the property before a disposition on the merits. Under the circumstances, the applicant's efforts to oppose the expungement of the lis pendens were appropriate, reasonable, and compensable.

### U. *Trial Preparation Services Are Reasonable and Compensable*

■ Rakitin has objected to $37,643.50 in legal fees incurred by the applicant in connection with preparation for the trial in the wrongful foreclosure action, *Dimas v. Investment Grade Loans, et al.,* Adversary No. 02–5453, which was scheduled for January 2005. Although the parties had a judicial settlement conference scheduled for January 2005, the applicant incurred these fees between Fall 2004 and January 2005, at which time the parties reached the first settlement agreement. These services related to trial preparation in complex real estate litigation involving the debtor's sole asset to which it had lost title. The stakes for the estate were very high. Settlement prospects are speculative by their nature. Arguably, it would have been malpractice for counsel not to prepare for an imminent trial date in a complex lawsuit. Except as addressed elsewhere herein, the fees related to trial preparation in the wrongful foreclosure action are reasonable and are allowed.

### V. *Communications With Rakitin's Counsel Are Compensable*

■ Rakitin has objected to $9,406.50 in fees incurred by the applicant in communications with Steve Finley, counsel for Rakitin, on the basis that the services were unnecessary. Having reviewed the time entries for those services, which are set forth in Exhibit A–2 to the applicant's third interim application and Exhibit A–6

to the fourth and final fee application, it appears that those services were reasonable and made necessary by the demands of the client's representative and managing member of Dimas. Except as otherwise provided in this decision, those fees are allowed as requested.

### W. *Fees That Rakitin Asserts Are Excessive Appear Reasonable*

#### 1. Adversary Proceeding to Void Fourth Deed of Trust (Adv. No. 02–5237, Dimas, LLC v. John Ho, et al.)

▮ Rakitin has objected to the entire first interim application, asserting that nearly $80,000 is excessive for an adversary proceeding that was dismissed. The applicant conducted discovery and an analysis of the debtor's claims against MCED. In addition to prosecution of the adversary against MCED, the services rendered during the first application period included defense of the suit by Snyder, pursuit of a refinance that would have prevented the foreclosure sale by IGL, and analysis of the potential claims against IGL. The fees incurred in connection with the adversary proceeding against MCED do not appear excessive, and they are allowed.

#### 2. Adversary Proceeding for Wrongful Foreclosure (Adv. No. 02–5453, Dimas LLC v. Investment Grade Loans, et al.)

▮ Rakitin has objected to approximately $195,000 in fees incurred in the wrongful foreclosure action during the more than two year period covered by the second interim application. The objection is directed in particular to the fees related to the preparation of the complaint, discovery, preparation of the first motion for summary adjudication, and preparation of the second motion for summary adjudication. Although Rakitin asserts that nearly

$12,000 in fees for the preparation of the complaint is excessive, the litigation involved complex real estate issues and multiple claims for relief. Because of the requirements of Fed.R.Civ.P. 11 that claims asserted in a pleading are warranted by existing law, counsel diligently conducted a thorough factual investigation and conducted substantial legal research before filing the complaint. The nearly $19,000 in fees incurred in conducting discovery yielded the favorable results on summary adjudication.

Rakitin has asserted that the work necessary for the second motion for summary adjudication was substantially completed during the preparation of the first motion and that the second motion did not result in any benefit to the estate. On the contrary, the issues addressed in the second motion for summary adjudication were expressly reserved upon the court's ruling on the first motion for summary adjudication. Two hearings were held on the second motion to afford the parties additional time to develop the facts in support of the motion. The services were not duplicative and most certainly resulted in a significant benefit to the estate. The court set aside the foreclosure sale by Lewis and restored title to the property to the debtor. Absent this result, Dimas would not have been situated in as favorable a position for settlement negotiations with Lewis. The wrongful foreclosure proceeding was complex and contentious. The substantial services that the applicant rendered in the proceeding were of a high quality and benefitted the estate significantly. The associated fees are reasonable and are allowed.

#### 3. Multiple Extensions to Perform Under Settlement

▮ The settlement agreement set a deadline within which Dimas must perform under its terms by making payment to

Lewis. Rakitin has objected to approximately $40,000 in fees incurred by the applicant to seek Lewis' consent to several extensions of time for Dimas to perform and to obtain court approval of the stipulations. These services included an amendment to the funding motion. The extensions of the time for performance were critical to the debtor. The consequence of the failure to timely perform was that Dimas would be required to forfeit title to the property to Lewis. Berliner Cohen had serious concerns about the structure of the settlement and Dimas' ability to perform. Consequently, it diligently communicated those concerns. Many of the time entries in this category are for discussions with Ms. Rakitin and with the broker to facilitate the funding. These services were reasonable, necessary, and compensable.

## X. *Entries That Are Allegedly Duplicative Appear Reasonable*

Rakitin has objected to numerous time entries by the applicant, which are set forth in Exhibit 11 attached hereto, asserting that the services described are duplicative of services performed by another professional or by the same professional who is reporting the entry. Based on a review of the time entries, it appears that these services are, in fact, not duplicative. Rather, they appear to reflect an appropriate delegation of responsibilities among professionals with varying hourly rates as well as oversight of more junior attorneys by more senior ones. The services appear to be reasonable and appropriate, and compensation therefor is allowed.

## Y. *Entries That Are Allegedly Overstated Are Reserved*

Rakitin has objected to numerous time entries by the applicant, asserting that the time reported has been overstated. These time entries are set forth in Exhibit W to the Declaration of Steven C. Finley in Support of Objection to Special Counsel's Third Application for Interim Compensation and Reimbursement of Expenses, Exhibit A and Amended Exhibit C to the Declaration of Steven C. Finley in Support of Supplemental Objection to Special Counsel's Second and Third Applications for Interim Compensation and Reimbursement of Expenses, and Exhibit 12 attached hereto. In some instances, Rakitin asserts that a conference or a meeting that has been reported did not take place. In support of the argument, Rakitin asserts that the applicant's time entries do not conform to the personal records of Adrienne Rakitin. Rakitin has introduced into evidence her cell phone records and her calendar. The applicant bears the burden of proof as to the reasonableness of its fees. *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. 1933. Because there is a factual dispute, the court reserves ruling as to the allowance of these fees totaling $76,132.50 pending an evidentiary hearing thereon.

## Z. *Certain Expenses Are Disallowed*

### 1. Word Processing Charges

■ Berliner Cohen has billed the estate $13,850.54 for word processing charges. This expense item constitutes an overhead expense that is not chargeable to the estate, and paragraph 22 of the Fee Guidelines provides that it is not reimbursable. Reimbursement for word processing charges is disallowed.

### 2. Copying Expense for File Turnover Upon Termination of Employment

■ In its fourth and final fee application, Berliner Cohen requests reimbursement of copying expenses of $3,981. The time period covered by this application coincided with the termination of Berliner

Cohen's employment by the estate and the turnover of client files. The original files are the property of the client, so the expense associated with the decision to retain copies of the files should be borne by the law firm. Because there is no breakdown of the copy expenses, it is presumed that all the charges incurred during this period were for the purpose of file duplication. Reimbursement of these copy charges is disallowed without prejudice to counsel providing a more detailed accounting of the charges. All other expenses are allowed as prayed.

### CONCLUSION

Based of the foregoing discussion, and good cause appearing, IT IS HEREBY ORDERED that:

1. Compensation of amount of $586,207 and expense reimbursement in the amount of $16,515.61 are approved and allowed on a final basis;

2. Berliner Cohen is authorized to withdraw and disburse the unpaid portion of this award of compensation and expense reimbursement in the total amount of $83,478.83 from funds on deposit by Dimas LLC in Berliner Cohen's trust account.

3. A telephonic case management conference will be held on February 6, 2007 at 10:30 a.m. to discuss scheduling, time estimates, witnesses, and other issues in connection the evidentiary hearing on the reserved issues related to the time entries that Rakitin has asserted are overstated.

### EXHIBIT 1

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 05/21/02 | C. Long | Analysis regarding Adrienne Rakitin. | 0.40 | 68.00 |
| 06/11/02 | C. Long | Analysis regarding joint venture agreement, terms of agreement, concerns and limitations. | 1.00 | 170.00 |
| 06/13/02 | D. Miller | Attention to amended subpoenas received from Castle Copy Service regarding Ridge View Investment, Access Bank and Bank of America. | 0.30 | 42.00 |
| 06/13/02 | C. Long | Telephone call with Al Reuter. | 0.40 | 68.00 |
| 06/14/02 | C. Long | Telephone call with Adrienne Rakitin. | 0.40 | 68.00 |
| 07/02/02 | C. Long | Meeting with Adrienne Rakitin. | 0.50 | 85.00 |
| 07/08/02 | C. Long | Meeting with Adrienne Rakitin. | 0.50 | 85.00 |
| 07/10/02 | C. Long | Research regarding hearing and how to proceed at hearing should settlement not go forward. | 0.30 | 51.00 |
| 07/11/02 | C. Long | Telephone calls with Al Reuter. | 0.30 | 51.00 |
| 07/12/02 | J. Dworak | Research material prior to meeting with Al Reuter and Adrienne Rakitin. Meeting with Mr. Reuter and Ms. Rakitin. | 3.70 | 1,202.50 |
| 07/30/02 | C. Long | Telephone calls with Mike Stone. | 0.60 | 102.00 |
| 07/30/02 | C. Long | Telephone call with Robert Wang. | 0.50 | 85.00 |
| 08/02/02 | C. Long | Telephone call with Mike Stone. | 0.80 | 136.00 |
| 08/08/02 | M. Isola | Investigation re: status. | 0.20 | 45.00 |
| 08/19/02 | C. Long | Telephone call with Adrienne Rakitin. | 0.30 | 51.00 |
| 08/20/02 | C. Long | Telephone calls with Mike Stone. | 0.90 | 153.00 |
| 08/23/02 | C. Long | Telephone calls with Mike Stone. | 0.50 | 85.00 |
| 08/23/02 | C. Long | Telephone calls with Adrienne Rakitin. | 0.40 | 68.0 0 |
| 08/29/02 | C. Long | Conference call with Adrienne Rakitin. | 0.40 | 68.0 0 |

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 09/04/02 | C. Long | Meeting with Adrienne Rakitin. | 0.40 | 68.00 |
| 09/24/02 | J. Dworak | Telephone call from Adrienne Rakitin. Analysis re: status. Telephone call to Adrienne Rakitin. | 0.90 | 292.50 |
| 09/27/02 | C. Long | Meeting with Mrs. Rakitin. | 0.30 | 51.00 |
| 02/25/03 | J. Dworak | Attention to status of case management conference. | 0.70 | 238.00 |
| 05/01/03 | J. Dworak | Receive, evaluate and follow up on letter from Adrienne Rakitin. | 1.80 | 612.00 |
| 02/06/04 | J. Dworak | Review facsimilies from Mrs. Rakitin. Address issue. Review material for purpose of sending letter explaining the status of the case and problems with issues raised. Draft letter to Mrs. Rakitin. | 3.90 | 1,365.00 |
| 11/16/04 | J. Dworak | Attention to issue related to Pretrial Conference Statement regarding witness for trial and potential testimony. | 5.70 | 1,995.00 |
| | | **TOTAL** | 26.10 | 7,305.00 |

## EXHIBIT 2

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 04/23/02 | M. Isola | Obtain bankruptcy court docket. Analysis re facts and issues. | 0.50 | 112.50 |
| 04/25/02 | D. Miller | Attention to duplication of client documents for the Critical Document Binder. Create additional pleading, bankruptcy, and client document files. | 0.70 | 98.00 |
| 04/26/02 | D. Miller | Quality control photocopies of critical documents and pleadings. Organize the pleading and Secretary of State files. Draft indices regarding same. | 3.70 | 518.00 |
| 05/01/02 | D. Miller | Amend the bankruptcy pleading file. Organize client documents in chronological order. | 4.00 | 560.00 |
| 05/02/02 | D. Miller | Draft index regarding Critical Document Binder. | 3.80 | 532.00 |
| 05/06/02 | D. Miller | Continue to draft index regarding Critical Document Binder. | 0.60 | 84.00 |
| 05/07/02 | D. Miller | Continue to draft index to Critical Document Binder. | 3.30 | 462.00 |
| 05/08/02 | D. Miller | Analysis regarding client document review. Attention to organization of documents and files for meeting with client. Continue to organize the Critical Document Binder. | 3.20 | 448.00 |
| 06/11/02 | D. Miller | Continue to draft index to Dan Snyder Agreement Binder. | 2.00 | 280.00 |
| 06/12/02 | D. Miller | Supplement the Dan Snyder Agreement Binder. Organize same. Review and revise index regarding same. | 1.20 | 168.00 |

| Date | Name | Description | Hours | Amount |
|---|---|---|---|---|
| 08/05/02 | D. Miller | Attention to duplication of additional client documents. Quality control same. Analysis regarding same. | 0.50 | 70.00 |
| 08/20/02 | D. Miller | Attention to invoice from Castle Copy Service regarding subpoena to Bank of America. | 0.30 | 42.00 |
| 02/26/03 | K. Davidsen | Travel to Bankruptcy Court to file pleading; travel to Pope office re document delivery | 1.20 | 174.00 |
| 04/30/04 | J. Dworak | Attention to following up with Court regarding status of order. | 0.90 | 315.00 |
| 04/30/04 | D. Miller | Research U.S. District Court database regarding order for summary judgment motion, Telephone call to court clerk regarding same. Analysis regarding research results. | 0.30 | 45.00 |
| 05/03/04 | D. Miller | Research Bankruptcy Court database regarding order. | 0.30 | 45.00 |
| 05/06/04 | D. Miller | Research courts database regarding status of order. | 0.30 | 45.00 |
| 05/10/04 | D. Miller | Research U.S. District Court database regarding order. | 0.30 | 45.00 |
| 01/04/05 | D. Miller | Continue to research critical documents. Attention to duplication of same. | 2.50 | 387.50 |
| 01/05/05 | D. Miller | Continue to organize the Critical Documents Binders. | 1.10 | 170.50 |
| 01/06/05 | D. Miller | Attention to trial preparation. Review pleadings file and identify discovery documents and orders for photocopying. Attention to duplication of same. Quality control photocopies. | 4.10 | 635.50 |
| 01/07/05 | D. Miller | Draft index regarding Pleading Binder. Organize same. | 2.50 | 387.50 |
| 01/10/05 | L. Palazzolo | Electronic filing of pre-trial statement. | 0.50 | 95.00 |
| 01/10/05 | D. Miller | Supplement the Pleading Binder and index regarding same. Analysis regarding organization of the Witness Binder. | 2.60 | 403.00 |
| 01/11/05 | D. Miller | Attention to organization of the Witness Binder | 2.00 | 310.00 |
| 03/22/05 | L. Palazzolo | Consultation regarding electronic filing. | 0.30 | 57.00 |
| 03/22/05 | C. Long | Attention to electronically filing fee application. | 0.50 | 105.00 |
| 03/29/05 | C. Long | Attention to filing fee application in bankruptcy action in addition to adversary action after consultation with Mr. Ellahie. | 0.50 | 105.00 |
| 04/01/05 | C. Long | Telephone calls with bankruptcy court concerning electronic filing. | 0.20 | 42.00 |
| 11/16/05 | L. Palazzolo | Prepare documents for e-filing and file application with exhibits, declaration and three certificates of service. | 1.00 | 190.00 |

598

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 11/21/05 | L. Palazzolo | Download and electronic filing of motion pleadings regarding sealing declarations. Review docket to identify declarations to be sealed. | 0.80 | 152.00 |
| 11/22/05 | D. Miller | Review Pacer's database and calendar database regarding Status Conference Hearing. Analysis regarding same. | 0.50 | 77.50 |
| | | **TOTAL** | 46.20 | 7,161.00 |

## EXHIBIT 3

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 09/03/02 | C. Long | Telephone call with Al Reuter regarding alternative funding. | 0.30 | 51.00 |
| 09/04/02 | C. Long | Telephone call with Al Reuter. | 0.30 | 51.00 |
| 09/05/02 | C. Long | Telephone call with Mr. Reuter. | 0.30 | 51.00 |
| 09/09/02 | C. Long | Telephone calls with Al Reuter regarding funding alternatives and opinion regarding interest rate charged. | 0.50 | 85.00 |
| 10/08/02 | J. Dworak | Telephone conference call with Al Reuter related to how to proceed with alleged wrongful foreclosure issue. | 0.90 | 292.50 |
| 02/24/04 | J. Dworak | Draft and edit letter to Al Reuter to address issue of success at motion to set aside trustee's deed. | 1.40 | 490.00 |
| 05/10/04 | J. Dworak | Receive and review and response to facsimile from Al Reuter by engaging in a long and involved telephone discussion related to how best to approach settlement options with Andy Lewis. | 1.90 | 665.00 |
| 05/12/04 | J. Dworak | Telephone call with Al Reuter regarding meeting. | 0.10 | 19.00 |
| 05/19/04 | J. Dworak | Telephone conference call with Al Reuter regarding settlement proposal. Discuss issues regarding what is in the best interest of Dimas LLC and all the members of Dimas LLC. | 1.70 | 595.00 |
| 12/20/04 | C. Long | Telephone call with Al Reuter regarding hearing. | 0.30 | 57.00 |
| 01/07/05 | C. Long | Telephone call with Al Reuter regarding appearance at settlement conference. | 0.30 | 63.00 |
| 01/21/05 | J. Dworak | Draft electronic message to Al Reuter confirming items discussed in telephone conference call regarding compromise claim for purposes of settlement. | 0.40 | 140.00 |
| 01/24/05 | J. Dworak | Telephone call from Al Reuter. Telephone call to Al Reuter regarding status of settlement agreement and content of settlement agreement. | 0.30 | 112.50 |
| 02/03/05 | J. Dworak | Receive and review electronic message from Al Reuter regarding settlement. | 0.60 | 225.00 |

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 12/05/05 | J. Dworak | Telephone call from Al Reuter regarding status of matter with Dimas, LLC and obtain input that Mrs. Rakitin was unhappy that Mr. Reuter had signed a truthful declaration. | 0.10 | 37.50 |
| 12/05/05 | J. Dworak | Address the request of Mr. Reuter for copies of filed pleadings, locate relevant pleading and prepare and transmit to Mr. Reuter an electronic message attaching pleadings. | 0.30 | 112.50 |
| | | **TOTAL** | 9.70 | 3,047.00 |

## EXHIBIT 4

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 05/29/02 | M. Isola | Analysis re Chapter 11 issues for paying off creditors. | 0.30 | 67.50 |
| 06/05/02 | M. Isola | Analysis re issues on relief from stay motion. | 0.30 | 67.50 |
| 07/25/02 | C. Long | Receipt and review of monthly operating report. | 0.30 | 51.00 |
| 05/25/04 | C. Long | Telephone call with Mark Bostick concerning outcome of hearing and remedies for Dimas. | 0.30 | 57.00 |
| 10/08/04 | J. Dworak | Telephone call with Adrienne Rakitin to discuss issues related to following up with a Plan of Reorganization. | 0.80 | 280.00 |
| 11/01/04 | J. Dworak | Telephone call to Adrienne Rakitin. Discuss what is being done to oppose the relief for stay motion, whether Mr. Ellahie has outlined a schedule of what needs to be done and when, advise that if Steve Finley is her lawyer and wants to help me he should file a "friend of the court" brief rather that argue with Christine, explain that the problems which were caused last week were wrong and outline the efforts of Berliner Cohen to help her and explain that Steve Finley should treat Christine with respect. | 1.70 | 595.00 |
| 11/01/04 | J. Dworak | Telephone conference call with Mark Bostick following up on information provided to him by Adrienne Rakitin and explaining status of matter. | 0.90 | 315.00 |
| 11/01/04 | J. Dworak | Receive and review information from Mark Bostick. Telephone Adrienne Rakitin and discuss with her. | 1.70 | 595.00 |
| 11/02/04 | C. Long | Preparation of insert for opposition to motion for relief from stay. | 2.50 | 475.00 |
| 11/03/04 | L. Palazzolo | Additional research and draft insert for objection to relief from stay regarding requirement for new notice of default. | 4.00 | 740.00 |
| 11/04/03 | J. Dworak | Telephone calls to and from Adrienne Rakitin regarding issue related to the court's order and the plan of reorganization. | 0.70 | 245.00 |

**600**

| | | | | |
|---|---|---|---|---|
| 11/06/04 | J. Dworak | Receive and review pleadings sent by Mark Bostick regarding acknowledgement to be signed by Adrienne. Due to lack of knowledge of the information communicated by Mark Bostick. Transmit the material to Javed for his review. | 2.90 | 1,015.00 |
| 11/10/04 | C. Long | Attended hearing on motion for relief from stay, discussion and conference with Mrs. Rakitin regarding plan and recent appraisal on property for settlement purposes. | 1.50 | 285.00 |
| 11/12/04 | J. Dworak | Discuss and explain motion to Adrienne Rakitin. Review issues related to motion for relief from stay. Address Adrienne Rakitin's questions. Provide input for opposition. | 3.40 | 1,190.00 |
| 11/12/04 | J. Dworak | Receive, review and analyze Motion for relief from the Automatic Stay. | 1.90 | 665.00 |
| 11/19/04 | J. Dworak | Receive, review and respond to electronic message from Mark Bostick. | 0.80 | 280.00 |
| 11/24/04 | J. Dworak | Receive and review information from Mr. Bostick regarding whether he had any insight on a better damage claim; analysis. | 0.90 | 595.00 |
| 12/02/04 | J. Dworak | Telephone call from Adrienne Rakitin regarding issues with the Plan of Reorganization prepared by Javed and the title company issues. Review documents Adrienne wanted reviewed. | 1.70 | 595.00 |
| 12/02/04 | C. Long | Conference regarding the plan and communications with Mrs. Rakitin concerning revisions. | 0.60 | 114.00 |
| 12/03/04 | C. Long | Review revised plan. | 1.50 | 285.00 |
| 12/08/04 | J. Dworak | Telephone call from Adrienne discussing her claim that she has lenders arranged and what those lenders can provide concerning the Plan of Reorganization. | 0.80 | 280.00 |
| 01/03/05 | J. Dworak | Telephone call from Jim Meech, real estate agent representing a group of doctors interested in making an offer to purchase 1499 Country Club Drive. Outline history and explain status of proceedings to Mr. Meech. | 0.80 | 280.00 |
| 01/03/05 | J. Dworak | Obtain documents related to status of proceedings and send to Mr. Meech to allow for offer to made on 1499 Country Club Drive. | 0.60 | 210.00 |
| 01/03/05 | J. Dworak | Telephone call to and from Adrienne Rakitin to explain nature of telephone call from real estate agent Jim Meech. Provide summary of what Mr. Meech wanted. Answer Mrs. Rakitin's questions. | 0.80 | 280.00 |
| 01/04/05 | J. Dworak | Draft, review and transmit electronic message to Mr. Kisner (attorney for Doctors interested in purchasing property) regarding Plan of Reorganization submitted by Mr. Ellahie. | 0.90 | 337.50 |

| Date | Name | Description | Hours | Amount |
|---|---|---|---|---|
| 01/04/05 | J. Dworak | Extended telephone conference all from Mr. Singh regarding his interest on behalf of a group of doctors to submit an offer to purchase 1499 Country Club Drive. Answer is question to submit and provide background of litigation. Receive during conversation introduction to attorney Daniel Kisner who would be submitting offer for the consideration by Dimas LLC. Explain that Mrs. Rakitin must be apprised of all offers. | 0.90 | 337.50 |
| 01/04/05 | J. Dworak | Telephone calls to and telephone calls from Adrienne Rakitin to discuss desire of a group of doctors to submit a purchase offer and to explain who will be contacting her to present offer. | 0.70 | 262.50 |
| 01/04/05 | J. Dworak | Receive and review electronic message from real estate agent Jim Meech. Attention to following up with Adrienne to explain change of realtors. | 0.40 | 150.00 |
| 01/04/05 | J. Dworak | Telephone call to and telephone call from attorney Daniel Kisner based upon information from Mr. Singh. Discuss issues related to status of litigation. Receive information about intent to submit a detailed settlement offer. | 0.90 | 337.50 |
| 01/06/05 | J. Dworak | Contact Mrs. Rakitin to discuss offer proposed to be made by Mr. Kisner. Discuss issues related to offer and settlement with Adrienne Rakitin. | 0.70 | 262.50 |
| 01/06/05 | J. Dworak | Receive and review electronic message from attorney Daniel Kisner regarding intent to submit an offer to purchase 1400 Country Club Drive. Review and comment upon message. | 0.40 | 150.00 |
| 01/07/05 | J. Dworak | Receive 25 page packet of information constituting offer to purchase 1499 Country Club Drive made Mahipal Singh et al through attorney Daniel Kisner. Review and analyze offer. Determine offer was for a net of $4,900,000 after reviewing contract. Review legal argument outlined by Mr. Kisner regarding why the property does not support a greater value. Complete analysis prior to speaking to Mrs. Rakitin. Telephone Complaint call too Adrienne Rakitin. | 2.90 | 1,087.50 |
| 01/07/05 | C. Long | Telephone call with Daniel Kisner regarding offer on purchase and name of related title company. | 0.30 | 63.00 |
| 01/07/05 | C. Long | Review of Offer to Purchase. | 0.30 | 105.00 |
| 01/10/05 | J. Dworak | Receive and review electronic message and letter from Dan Kisner explaining basis for offer to purchase. Provide information to Adrienne. | 0.60 | 225.00 |
| 01/10/05 | J. Dworak | Receive, review and respond to electronic message from Dan Kisner. | 0.80 | 300.00 |

| | | | | |
|---|---|---|---|---|
| 01/10/05 | J. Dworak | Telephone call from Stephanie Golden and her broker to discuss issues related to the sale of the lots. | 0.70 | 262.50 |
| 01/10/05 | J. Dworak | Draft, revise and review and send electronic message to Dan Kisner regarding reason of Adrienne why the offer to purchase 1499 Country Club Drive make no sense, Provide Kisner chance to explain offer. | 0.80 | 300.00 |
| 01/12/05 | J. Dworak | Receive, review and follow-up on responsive electronic message from Dan Kisner regarding making a better offer to purchase 1499 Country Club Drive. | 0.40 | 150.00 |
| 01/12/05 | J. Dworak | Draft electronic message to Dan Kisner updating him on the status of settlement proceedings and encouraging to make a better offer to purchase. | 0.80 | 300.00 |
| 01/12/05 | C. Long | Telephone call to Stephanie Golden regarding telephone call from Peter and Paul Rakitin. | 0.30 | 63.00 |
| 01/13/05 | J. Dworak | Draft electronic message to Javed Ellahie outlining information received from Dan Kisner, Provide information on response written to Dan Kisner. | 0.60 | 225.00 |
| 01/14/05 | C. Long | Numerous telephone calls with Mrs. Rakitin regarding meetings with real estate brokers, promise that she will deliver pro forma first thing Monday morning and have all number necessary for counter offer ready by Monday morning. | 0.40 | 84.00 |
| 01/19/05 | C. Long | Telephone call with Stephanie Golden regarding relevant and disclosable terms of agreement, who she is authorized to contact and negotiate with on behalf of Dimas, and rough estimate for timeline. | 0.40 | 84.00 |
| 01/31/05 | J. Dworak | Draft electronic message to Javed Ellahie bankruptcy attorney for Dimas LLC, Al Reuter CPA of Dimas and Steve Finley personal attorney for the members of Dimas LLC regarding issues related to the tax implications of the settlement agreement. | 0.90 | 337.50 |
| 02/07/05 | J. Dworak | Receive, review and investigate Adrienne's claim to a priority payment from the Estate of Dimas in excess of $70,000. | 0.90 | 337.50 |
| 02/22/05 | J. Dworak | Telephone calls to and from Edsel Williams related to the availability of a loans which calls were made at the request of Adrienne Rakitin. | 0.90 | 315.00 |
| 02/25/05 | J. Dworak | Receive and review electronic messages from Edsel Williams sent at the request of Adrienne Rakitin to advise of amount of loan available and to attempt to see if Mr. Lewis is willing to accept a cash sum payment despite the settlement agreement to by Dimas LLC and the Rakitin. | 0.70 | 262.50 |

| 01/27/06 | C. Long | Review of Dimas' plan to reorganization to determine if any objection. | 1.40 | 350.00 |
|----------|---------|-----------------------------------------------------------------------|------|--------|
| | | **TOTAL** | **50.70** | **16,251.00** |

## EXHIBIT 5

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/12/02 | B. Kim | Research forms to use for motion for default judgment; begin to draft motion for default judgment. | 3.10 | 511.50 |
| 08/14/02 | B. Kim | Continue draft pleadings for default and default judgment. | 6.20 | 1,023.00 |
| 08/15/02 | C. Long | Analysis regarding motion for default and pleadings. | 0.40 | 68.00 |
| 08/15/02 | B. Kim | Edit and revise pleadings for entry of default and motion for default judgment; complete memo and points and authorities and declaration. | 1.50 | 247.50 |
| 09/05/02 | C. Long | Continued preparation of motion for default, including preparation of Declaration of Christine H. Long, and review of all pleadings and files dealing with claims involving Mr. Ho. | 2.10 | 357.00 |
| 10/10/02 | B. Kim | Revise default judgment, declaration, motion of points and authorities in support of default judgment, | 1.50 | 247.50 |
| 10/24/02 | B. Kim | Revise pleadings and declarations for default judgment filing. | 1.00 | 165.00 |
| 10/25/02 | C. Long | Telephone calls with Ms. Rakitin, meeting with her in office regarding her declaration. | 0.30 | 51.00 |
| 10/25/02 | C. Long | Conference with Adrienne Rakitin. | 0.30 | 51.00 |
| 10/25/02 | C. Long | Prepare documents for default judgment filing; meeting with A. Rakitin to sign declaration. | 2.10 | 181.50 |
| 01/17/03 | B. Kim | Conference with opposing counsel re default judgment; draft letter re same. | 1.00 | 165.00 |
| 01/22/03 | B. Kim | Begin preparing papers for entry of default and default judgment. | 0.80 | 132.00 |
| 01/23/03 | B. Kim | Draft letter to opposing counsel re default judgment; continue drafting papers for entry of default and default judgment. | 3.00 | 495.00 |
| | | **TOTAL** | **23.30** | **3,695.00** |

## EXHIBIT 6

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/03/04 | J. Dworak | Telephone conference call to Edsel Williams person referred by Adrienne Rakitin as the possible new lender. Discuss matters and what needs to be done. | 1.20 | 420.00 |
| 03/03/04 | J. Dworak | Telephone call with Edsel Williams regarding issues related to potential financing. | 0.90 | 315.00 |

| 03/04/04 | J. Dworak | Telephone conference call with Edsel Williams potential lender of Dimas LLC. Outline status. Address questions and issues. | 1.30 | 455.00 |
|---|---|---|---|---|
| 03/04/04 | J. Dworak | Draft, review and revise detailed letter to Edsel Williams outlining history of dispute, commenting upon status of motion, and address questions and issues raised by Edsel in the telephone call. | 1.70 | 595.00 |
| 03/19/04 | J. Dworak | Draft email to Peter Rakitin related to issue discussed at hearing. | 0.60 | 210.00 |
| 03/22/04 | J. Dworak | Draft, review and revise letter to Peter Rakitin regarding status of matter and recommendations on how to proceed. | 0.90 | 315.00 |
| 03/24/04 | J. Dworak | Draft, review and revise letter to Adrienne Rakitin regarding obligation of Berliner Cohen to keep other members of Dimas LLC apprised of status of matters. | 1.90 | 665.00 |
| 04/26/04 | J. Dworak | Telephone conference call with Peter Rakitin to update him in status of hearing and issue related to how Dimas LLC should proceed. | 0.90 | 315.00 |
| 04/30/04 | J. Dworak | Telephone conference call with Laroy Smith discussing Andy Lewis and basis of fair proposal to make to Andy Lewis. Address questions regarding outcome of hearing. | 1.70 | 595.00 |
| 07/08/04 | J. Dworak | Receive input from Peter Rakitin. Review files to obtain information to respond to inquiry. Draft detailed response. | 3.90 | 1,365.00 |
| 08/10/04 | J. Dworak | Letter to Michael Stone regarding contacting Ed Weiner. | 0.50 | 175.00 |
| 08/10/04 | J. Dworak | Letter to Edward Weiner regarding mediation and a scheduling. | 0.50 | 175.00 |
| 08/18/04 | J. Dworak | Receive and respond to electronic message from Edward Weiner regarding panel mediation. | 0.90 | 315.00 |
| | | **TOTAL** | 6.90 | 5,915.00 |

## EXHIBIT 7

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 01/21/05 | J. Dworak | Review note and discuss content of tape recording regarding preparation of settlement agreement. Identify additional provisions to be included. Review and provide insight on how to address ambiguities between Court Record and notes used to outline settlement agreement. | 0.70 | 262.50 |
| 01/24/05 | J. Dworak | Read, review and revise settlement agreement to include necessary provision on the history of the matter as well as other provisions such as lien releases. | 1.70 | 637.50 |
| 01/25/05 | J. Dworak | Receive, review, investigate and respond to electronic message sent by Attorney Finley on | 1.20 | 450.00 |

behalf of Adrienne, Peter and Paul Rakitin. Put in place procedure so that all communication go to Mr. Finley. Meeting with staff to implement directive.

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/25/05 | J. Dworak | Review the draft settlement agreement. Make corrections. Add provisions. Review language. Determine appropriate signatures. | 1.80 | 675.00 |
| 01/27/05 | J. Dworak | Research typical lien release provisions to determine scope and content of covenant of lien release provision on the sale of lots. Draft provision to be used in settlement agreement which would allow Dimas LLC and its members to be paid as lots are sold rather than wait to the lender is paid in full. | 1.90 | 712.50 |
| 01/27/05 | J. Dworak | Receive and review new draft of settlement agreement. Attention to procuring correct and additional information for recitals and additional provisions. | 1.70 | 637.50 |
| 02/02/05 | J. Dworak | Review documents regarding the history of 1499 Country Club Drive as requested by Adrienne Rakitin to determine what needs or should be included in the Recital of the Settlement Agreement. | 1.70 | 637.50 |
| 02/02/05 | J. Dworak | Telephone calls back and forth with Adrienne Rakitin discussing Recital and content of the settlement agreement. | 0.90 | 337.50 |
| 02/03/05 | J. Dworak | Telephone calls to and from Adrienne Rakitin discussing the content of the settlement agreement and her unhappiness with the settlement conference. | 0.90 | 337.50 |
| 02/04/05 | J. Dworak | Consider, draft, review, revise and finally send electronic message to Javed Ellahie regarding content of messages received from Adrienne Rakitin and impact of messages on the status of the settlement agreement. | 0.90 | 337.50 |
| 02/04/05 | J. Dworak | Draft, review, revise and send electronic messages to Mr. Finley the personal attorney for Mrs. Rakitin addressing the issues she has raised and input regarding settlement. | 1.30 | 487.50 |
| | | **TOTAL** | 14.70 | 5,512.50 |

## EXHIBIT 8

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 11/16/05 | J. Dworak | Review material necessary to address the issues raised by Mr. Finley and draft a detailed but preliminary response to the Finley letter. | 0.70 | 262.50 |
| 11/16/05 | J. Dworak | Receive and review electronic message from Steve Finley related to further actions on behalf of Dimas, LLC. | 0.20 | 75.00 |
| 11/19/05 | J. Dworak | Review the letter from Steve Finley dated November 16, 2005 containing baseless assertions. | 0.80 | 300.00 |

| | | | | |
|---|---|---|---|---|
| | | Research to confirm that lack of merit in Finley's statements as a matter of law. Dictate a responsive letter. | | |
| 11/22/05 | J. Dworak | Draft detailed letter to Steve Finley regarding further response to his November 16, 2005 letter and address the issue of our attempts to assist Mrs. Rakitin in having longer time to stay at property, our good faith in agreeing to the stipulation, and his inaccurate statements regarding Berliner Cohen's representation. | 0.90 | 337.50 |
| 11/23/05 | J. Dworak | Receive and review Finley letter regarding terminating Berliner Cohen and transfer of files. | 0.70 | 262.50 |
| 11/23/05 | J. Dworak | Draft detailed electronic message responding to the issues raised by Mr. Finley in his November 23, 2005 letter. | 0.90 | 337.50 |
| 11/28/05 | J. Dworak | Receive input from outside counsel regarding how to respond to Mr. Finley Letter. Evaluate input and dictate a responsive letter, which follows up on earlier electronic message. | 0.70 | 262.50 |
| 12/07/05 | J. Dworak | Draft electronic message to Javed Ellahie to outline the requests of Mrs. Rakitin and her lawyer to address her needs and to accommodate her requests as soon as possible. | 0.40 | 150.00 |
| 12/07/05 | J. Dworak | Receive and review electronic message from Javed Ellahie regarding a termination of representation and the requested creation of a privilege log. | 0.30 | 112.50 |
| 12/07/05 | J. Dworak | Draft electronic message to Central Files Supervisor to make certain that Mrs. Rakitin is accommodated and her various requests are met and outline what should be done. | 0.20 | 75.00 |
| 12/09/05 | J. Dworak | Draft electronic message to Christine Long related to the communications with Mr. Ellahie. | 0.20 | 75.00 |
| 12/09/05 | J. Dworak | Receive and review electronic message from Javed Ellahie which includes various attachments including Appointment Pleading, Order of Appointment, and Declaration of Javed Ellahie. | 0.80 | 300.00 |
| 12/09/05 | J. Dworak | Draft, review, edit and transmit electronic message to Javed Ellahie related to the various issues raised including those raised by Mr. Finley and explain that previously input and cooperation of Mr. Finley regarding the requested stipulation was made but no response from Mr. Finley was received. | 0.30 | 112.50 |
| 12/13/05 | J. Dworak | Draft, review and transmit message to Javed Ellahie related to telephone call from Mrs. Rakitin and her various requests. | 0.30 | 112.50 |
| 12/13/05 | J. Dworak | Draft electronic message to Christine Long related to content of the telephone call with Mrs. | 0.20 | 75.00 |

| | | | | |
|---|---|---|---|---|
| | | Rakitin and to outline best how to assist and accommodate Mrs. Rakitin. | | |
| 12/13/05 | J. Dworak | Receive electronic message from Christine Long to Javed related to the termination of Berliner Cohen as special counsel and discuss content and what to do regarding her input and information. | 0.40 | 150.00 |
| 12/13/05 | J. Dworak | Receive and review electronic message and attachment to message sent by Javed Ellahie regarding status of Berliner Cohen as Special Counsel. | 0.30 | 112.50 |
| 12/13/05 | J. Dworak | Telephone call from Mrs. Rakitin regarding the files of Dimas LLC. | 0.10 | 37.50 |
| 12/13/05 | J. Dworak | Telephone call from Adrienne Rakitin and follow up regarding the request made by her. | 0.20 | 75.00 |
| 12/13/05 | C. Long | Receipt and review of proposed termination agreement prepared by Mr. Ellahie, revisions to the same. | 0.30 | 63.00 |
| 12/14/05 | J. Dworak | Receive and review electronic message from Christine Long to Javed Ellahie and the response and discuss to determine what information should be provided to Javed in the pleadings regarding termination. | 0.40 | 150.00 |
| 12/14/05 | J. Dworak | Preparation of files for Mrs. Rakitin's review. | 0.30 | 63.00 |
| 12/15/05 | J. Dworak | Receive and review electronic message from Javed Ellahie related to the requests of Mrs. Rakitin. | 0.10 | 37.50 |
| 12/15/05 | J. Dworak | Draft, review and transmit electronic message to Javed Ellahie following up on the requests of Adrienne Rakitin. | 0.20 | 75.00 |
| 12/19/05 | C. Long | Conference regarding file copying and procedure to employ. | 0.50 | 105.00 |
| 12/23/05 | J. Dworak | Receive and review the Notice of Hearing and the Application of Javed Ellahie to evaluate it relative to that of Berliner Cohen. | 0.50 | 187.50 |
| 12/23/05 | J. Dworak | Evaluate status of matters with Mrs. Rakitin and thereafter draft, review, edit electronic message to Steve Finley to address the issues he has raised. | 0.40 | 150.00 |
| 12/27/05 | J. Dworak | Telephone call to Mr. Ellahie to discuss compliance with the requests of Mrs. Rakitin and inquire how best to follow-up on the outstanding issues. | 0.20 | 75.00 |
| 12/30/05 | J. Dworak | Obtain pleadings and orders and review how best to provide notice of actions taken and then prepare and have executed pleading involving Notice of Disbursement. | 0.70 | 262.50 |
| 01/03/06 | J. Dworak | Draft electronic message to Christime Long regarding meeting the requests of Mrs. Rakitin regarding the files and confirm compliance. | 0.40 | 158.00 |

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/03/06 | C. Long | Review of Dimas records to determine that copies were properly made of the requested files, and review of materials to determine that no other client material was included. | 1.90 | 475.00 |
| 01/03/06 | J. Dworak | Draft, edit and review electronic message to Javed Ellahie regarding the requests of Mrs. Rakitin and the actions to undertaken com[p]ly. | 0.30 | 118.50 |
| 01/04/06 | C. Long | Continue review of Dimas records to determine that copies were properly made of the requested files, and review of material to determine that no other client material was included. | 2.10 | 525.00 |
| 01/05/06 | C. Long | Review of certain correspondence files to determine appropriate material copies and original produced for client. | 1.90 | 475.00 |
| 01/05/06 | C. Long | Receipt and review of limited objection to termination of counsel. | 0.10 | 25.00 |
| 01/06/06 | J. Dworak | Obtain information about objections filed by Mike Stone on behalf of Andy Lewis related to being relieved as Special Counsel. Evaluate and determine how to proceed. | 0.90 | 355.50 |
| 01/10/06 | C. Long | Review of files requested by Rakitin, attention to copying files. | 1.10 | 275.00 |
| 01/11/06 | C. Long | Review of memorandum and notes for copying and delivery to Adrienne Rakitin. | 1.90 | 475.00 |
| 02/15/06 | J. Dworak | Receive and review electronic messages regarding the files of Dimas LLC and request to photocopy and how best to comply. | 0.40 | 158.00 |
| | | **TOTAL** | 23.20 | 7,433.50 |

## EXHIBIT 9

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/05/06 | J. Dworak | Draft electronic message to Joseph Fasulo the Office Administrator regarding obtaining information and accounting information requested by Steve Finley on behalf of Adrienne Rakitin. | 0.40 | 158.00 |
| 01/05/06 | J. Dworak | Draft, review and confirm content and transmit to Steve Finley an electronic message concerning his request for explanation of timing fee applications. | 0.30 | 118.50 |
| 01/06/06 | J. Dworak | Receive and review electronic message from Steve Finley regarding additional fee applications and discuss content with other necessary lawyers regarding response. | 0.40 | 158.00 |
| 01/06/06 | J. Dworak | Draft, review, revise and edit and transmit to Steve Finley an electronic message related to responding to his further baseless claims. | 0.30 | 118.50 |
| 01/06/06 | J. Dworak | Receive and review electronic message from Javed Ellahie related to the Court's Order. Obtain, read and review Order. | 0.40 | 158.00 |

| | | | | |
|---|---|---|---|---|
| 01/06/06 | C. Long | Receipt and review of pleadings concerning disbursements of funds. | 0.10 | 25.00 |
| 01/09/06 | J. Dworak | Draft, dictate, review, revise, edit and transmit letter to Steve Finley responding to his request for an accounting. | 0.70 | 276.00 |
| 01/09/06 | J. Dworak | Obtain necessary information to dictate letter to Mr. Finley regarding accounting of information including meeting with accounting personnel and discuss payments. | 0.70 | 276.50 |
| 01/13/06 | J. Dworak | Attend telephonic hearing on Motion to Seal Records. | 0.40 | 158.00 |
| 01/27/06 | C. Long | Review of Dimas' plan of reorganization to determine if any objection. | 1.40 | 350.00 |
| 02/01/06 | J. Dworak | Receive and review electronic message from Christine Long to Steve Finley, Meet and discuss with Christine Long. | 0.40 | 158.00 |
| 02/01/06 | J. Dworak | Receive and review letter from Mr. Finley and notice the inaccuracies contained in the document and review material to follow-up and draft electronic message to Christine Long regarding the appropriate response. | 0.70 | 276.50 |
| 02/01/06 | C. Long | Receipt and review of letter from Mr. Finley, preparation of reply to false statements of Mr. Finley concerning the Dimas file copies. | 0.30 | 75.00 |
| 02/03/06 | J. Dworak | Receive and review electronic message from Javed Ellahie related to the disbursement of funds. Transmit information and follow-up. | 0.40 | 158.00 |
| 02/03/06 | J. Dworak | Meeting to review obligations of Berliner Cohen in light of Mr. Ellahie stated inability to handle the trust funds although ordered to him. | 0.30 | 118.50 |
| 02/03/06 | J. Dworak | Meeting with Trust Accounts personnel to explain nature of Order and how to comply with the request from Mr. Ellahie in compliance with the Order of the Court and the rules on Trust disbursements. Outline how to handle the situation. | 0.70 | 276.50 |
| 02/03/06 | J. Dworak | Receive and review electronic message from Bernard Greenfield regarding issues related to the denial of the Motion of Mr. Finley to have amounts on deposit transferred to the account of Dimas LLC and to have the funds placed in the account of Javed Ellahie. | 0.40 | 158.00 |
| 02/03/06 | C. Long | Receive Demand for payment from Javed Ellahie. Attention to disbursement to Javed Ellahie. | 0.30 | 75.00 |
| 02/15/06 | J. Dworak | Meeting with personnel in accounting to discuss request of Mr. Finley to review files and accounting records and to obtain accounting records of disbursements. | 0.30 | 118.50 |

| | | | | |
|---|---|---|---|---|
| 02/15/06 | J. Dworak | Receive and review electronic message from Steve Finley and forward along regarding issues related to his requested information. | 0.30 | 118.50 |
| 02/15/06 | J. Dworak | Obtain and review Comerica Statement to be transmitted to Steve Finley. | 0.30 | 118.50 |
| 02/16/06 | J. Dworak | Obtain and review information from Berliner Cohen accounting Department to prepare a report to Dimas LLC related to its trusts funds. Meet with accounting clerk to ascertain what was done and why as reflected in accounting documents in order to report to Mr. Finley and Mrs. Rakitin. | 0.70 | 276.50 |
| 02/16/06 | J. Dworak | Dictate letter to Adrienne Rakitin on behalf of Dimas LLC outlining an accounting of Trust Funds, explain enclosed documents and to seek direction on what to do with the Trust Funds based upon input received from Javed Ellahie. | 0.40 | 158.00 |
| 02/21/06 | J. Dworak | Review and revise previously dictated letter to Adrienne Rakitin related to the accounting issues requested by her attorney Steve Finley and evaluate the accuracy of the information contained in the letters. | 0.30 | 118.50 |
| 03/03/06 | J. Dworak | Draft letter to Shannon Mounger related to the trust monies of Dimas LLC to obtain bank statements.Discuss format of accounting. | 0.70 | 276.50 |
| 03/07/06 | J. Dworak | Obtain and review accounting information regarding trust account to review and provide to Adrienne Rakitin and Mr. Finley. | 0.60 | 237.00 |
| 03/08/06 | J. Dworak | Draft, review, revise and transmit letter to Steve Finley related to the accounting information of Dimas LLC. Confirm accounting information. | 0.40 | 158.00 |
| 03/21/06 | J. Dworak | Review Mr. Finley's letter containing misstatements and draft a responsive letter to address his inaccurate statements and to outline the correct events and address compliance with request for providing information. | 0.80 | 316.00 |
| 03/22/06 | J. Dworak | Draft, dictate, review, edit, revise and transmit to Steve Finley letter responding to his baseless claims. | 0.50 | 197.50 |
| 03/22/06 | J. Dworak | Draft, review, edit, revise and transmit letter to Javed Ellahie related to trust funds and the motion filed by Mr. Lewis. | 0.30 | 118.50 |
| 03/22/06 | J. Dworak | Review files to respond to the incorrect statements of Mr. Finley and review the letter illustrating that he is wrong in his claims. Draft, review, edit and transmit detailed letter to Mr. Finley. | 0.80 | 316.00 |
| 03/31/06 | J. Dworak | Draft and transmit detailed electronic message to Javed Ellahie related to issues raised by Mr. Finley. | 0.40 | 158.00 |

| | | TOTAL | 15.40 | 5,778.00 |
|---|---|---|---|---|

## EXHIBIT 10

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 01/27/03 | D. Miller | Research billing statements. Analyze same. | 2.50 | 362.50 |
| 02/05/03 | D. Miller | Attention to changes to billing statements. | 0.30 | 43.50 |
| 02/07/03 | D. Miller | Attention to billing statements for submittal to the court. Review and revise same. | 1.50 | 217.50 |
| 02/25/03 | D. Miller | Analysis regarding billing statements. | 0.30 | 43.50 |
| 01/27/05 | C. Long | Initial preparation of fee application-attention to identifying categories of billing. | 1.60 | 336.00 |
| 01/27/05 | C. Long | Continued preparation of categories for fee application. | 0.90 | 189.00 |
| 01/31/05 | K. Davidsen | Confer with attorney Long re fee application organization (.2); begin review and invoice organization of all fee categories for fee application (2.2); review and all cost categories for fee application (.6). | 3.00 | 465.00 |
| 01/31/05 | C. Long | Continued preparation of division of bills into categories related to fee application. | 2.90 | 609.00 |
| 02/02/05 | K. Davidsen | Draft all spreadsheets to be used in calculating fee application formats (1.8); obtain and assemble cost invoices and begin categorizing same (.7); separate billing entries per sixteen categories for fee application format (4.7). | 7.20 | 1,116.00 |
| 02/03/05 | K. Davidsen | Continue breakdown and compilation of hours and fees re adversary proceedings of Ho and Lewis and highlight same for the Court (6.1) | 6.19 | 45.50 |
| 02/07/05 | K. Davidsen | Continue calculations re categories of attorneys/paralegal hours and fees in fee application format. | 7.90 | 1,224.50 |
| 02/09/05 | K. Davidsen | Continue calculations for all hours and fees by matter per fee application format. | 8.50 | 1,317.50 |
| 02/10/05 | K. Davidsen | Continue calculations for fee application per matter by attorney hours and fees and edit fee application accordingly. | 6.90 | 1,069.50 |
| 02/14/05 | K. Davidsen | Continue calculations of all hours and fee in 16 categories for fee application and edit accordingly. | 7.10 | 1,100.50 |
| 02/16/05 | K. Davidsen | Continue categorizing hours and fees in application format and begin categorization of costs. | 7.10 | 1,100.50 |
| 02/17/05 | K. Davidsen | Continue cross-checking fees and hours in all categories and edit fee application insert accordingly. | 5.30 | 821.50 |
| 02/28/05 | K. Davidsen | Continue calculations and cross-checking hours and fees in application format. | 10.00 | 1,550.00 |

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 03/02/05 | K. Davidsen | Continue cross-checking hours and fees for application format and checking re write-offs. | 6.90 | 1,069.50 |
| 03/03/05 | K. Davidsen | Complete all cross-checking of attorney fees by invoices, hours per attorney entries and sections of Exhibit A tot he fee application and edit application accordingly. | 6.40 | 992.00 |
| 03/09/05 | K. Davidsen | Calculate attorney time and fees for January and February, 2005 in fee application format and edit entries. | 6.40 | 992.00 |
| 03/10/05 | K. Davidsen | Prepare documents re categories for January and February, 2005 invoices and highlight same for Exhibit A to fee application (6.4); begin editing fee application to reflect Jan. And Feb. 2005 hours, and fees (.8). | 7.20 | 1,116.00 |
| 03/12/05 | K. Davidsen | Continue calculations re hours and fees per each category of January and February, 2005 invoices in fee application format. | 2.20 | 341.00 |
| 03/13/05 | K. Davidsen | Continue cross-checking fee and hour calculations for categories to be added to fee application. | 2.10 | 325.00 |
| 03/14/05 | K. Davidsen | Complete breakdown of hours and fees for added categories of services and cross-calculate balances (4.9); begin adding 2005 costs to each category (.8). | 5.70 | 883.50 |
| 03/16/05 | K. Davidsen | Complete breakdown of additional costs and add to calculations (1.2). | 1.20 | 186.00 |
| 11/14/05 | K. Davidsen | Assemble invoice documents by additional categories and quality control same (3.8); begin calculations of hours and fees for additional 10 categories in fee application format (1.4). | 5.20 | 806.00 |
| 11/15/05 | K. Davidsen | Continue calculations of fees and hours for additional 10 categories in fee application format (3.0); assemble all exhibits (.7). | 3.70 | 573.50 |
| 11/16/05 | K. Davidsen | Finalize quality control of application, declaration and exhibit documents (3.2). | 3.20 | 496.00 |
| 03/15/06 | K. Davidsen | Prepare invoices for Long's review and categorization for fee application. | 0.20 | 34.00 |
| 03/28/06 | C. Long | Preparation of categories for fee application. | 1.50 | 375.00 |
| | | **TOTAL** | 131.09 | 19,801.00 |

## EXHIBIT 11

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 04/22/02 | D. Miller | Analysis regarding causes of action to the complaint. | 0.50 | 70.00 |
| 07/02/02 | C. Long | Receipt and review of letter and documents from Mr. Snyder. | 0.30 | 51.00 |
| 07/03/02 | C. Long | Telephone calls with Gloria Valencia regarding subpoena to Bank of America | 0.30 | 51.00 |

| | | | | |
|---|---|---|---|---|
| 07/24/02 | N. Johnson | Consultation re issues re interest and arguments to reduce claim and re procedure for raising objections to interest and late charges demanded by secured lender | 0.30 | 82.50 |
| 07/31/02 | C. Long | Analysis regarding hearing and further action. | 0.50 | 85.00 |
| 04/16/03 | J. Dworak | Review information received from Adrienne Rakitin. Analyze basis for motion for summary judgment. | 1.90 | 646.00 |
| 06/06/03 | J. Dworak | Receive and review missive from Adrienne Rakitin regarding corrections to First Amended Complaint, and input related to Motion to Expunge Lis Pendens. | 1.90 | 646.00 |
| 06/27/03 | J. Dworak | Receive and review letters from Adrienne Rakitin related to points raised in motion to expunge lis pendens. | 0.90 | 306.00 |
| 01/08/04 | J. Dworak | Obtain approval from Mrs. Rakitin to discuss possible settlement with Mike Stone. | 0.90 | 315.00 |
| 01/27/04 | J. Dworak | Review and edit pleadings for temporary restraining order and motion for preliminary injunction. Discuss how to proceed and necessary pleadings. | 4.90 | 1,715.00 |
| 02/04/04 | J. Dworak | Receive, review and comment upon email message sent by Dan Snyder at the request of Mrs. Rakitin regarding information on Broker issues and how those issues incorporate into motion. | 3.90 | 1,365.00 |
| 02/05/04 | J. Dworak | Research and review basis to set aside trustee sale. Review civil code sections. Ascertain what Andy Lewis did. | 5.70 | 1,995.00 |
| 03/02/04 | J. Dworak | Receive and review information from Javed in response to letters. | 0.90 | 315.00 |
| 06/09/04 | J. Dworak | Draft detailed letter to Adrienne Rakitin regarding how to approach settlement conference and issue related to litigation. | 1.70 | 595.00 |
| 08/03/04 | J. Dworak | Discuss and review what to present to Court at the Case Management Conference with Adrienne Rakitin. | 0.70 | 245.00 |
| 08/03/04 | J. Dworak | Receive and respond to electronic message regarding outcome of Case Management Conference. | 0.70 | 245.00 |
| 08/03/04 | J. Dworak | Receive and follow-up on electronic facsimile message from Mike Stone related to case management. | 0.90 | 315.00 |
| 12/09/04 | J. Dworak | Draft letter to Adrienne Rakitin addressing her questions and concerns. Provide a detailed explanation in correspondence on issues relating to propriety of a criminal action Adrienne Rakitin desired to file against Andy Lewis, trial preparation, damages unique to Dimas LLC and what needs to be done for trial. | 2.90 | 1,015.00 |

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 12/16/04 | J. Dworak | Receive input from Adrienne Rakitin regarding the preparation of a Mediation Statement. Review material and outline issues to be presented. Prepare rough draft. | 3.90 | 1,365.00 |
| 12/16/04 | J. Dworak | Review issue to be presented in Mediation Statement. Double check for inconsistencies with Plan of Reorganization. | 2.70 | 945.00 |
| 02/04/05 | J. Dworak | Draft detailed letter to Adrienne Rakitin regarding electronic messages previously sent so she could be informed of content of discussions. | 1.20 | 450.00 |
| | | **TOTAL** | 37.60 | 12,817.50 |

## EXHIBIT 12

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 04/23/02 | D. Miller | Discussion with client regarding causes of action. | 2.00 | 280.00 |
| 04/23/02 | C. Long | Investigate status of case, and discussion regarding future handling. | 2.00 | 340.00 |
| 05/28/02 | C. Long | Meeting with Adrienne Rakitin and Al Reuter. | 1.10 | 187.00 |
| 06/13/02 | C. Long | Telephone call with Adrienne Rakitin regarding negotiations, dealings and communications. | 0.40 | 68.00 |
| 06/18/02 | K. Genc | Analysis regarding final preparation of documents for arbitration hearing. | 1.80 | 306.00 |
| 06/26/02 | C. Long | Attended hearing at the bankruptcy court. | 2.90 | 493.00 |
| 07/15/02 | C. Long | Telephone call with Mike Stone regarding funding motion, fourth deed of trust and AMEX loan. | 0.50 | 85.00 |
| 07/31/02 | J. Dworak | Meeting with Mrs. Rakitin related to agreement with Berliner Cohen. Explain that no further adversary action will be filed. | 1.90 | 617.50 |
| 07/31/02 | C. Long | Attended hearing in bankruptcy action. | 2.20 | 374. 00 |
| 08/05/02 | C. Long | Telephone calls with Mr. Stone regarding stipulation and settlement agreement. | 1.30 | 221.00 |
| 09/03/02 | C. Long | Meeting with Adrienne Rakitin and Al Reuter regarding loan and purchase agreements. | 2.10 | 357.00 |
| 09/10/02 | C. Long | Meeting with Mrs. Rakitin, preparation of escrow instructions, analysis regarding the same. | 1.00 | 170.00 |
| 09/10/02 | C. Long | Telephone call with Adrienne Rakitin post sale. | 0.30 | 51.00 |
| 09/25/02 | J. Dworak | Telephone call to Adrienne Rakitin. Respond to letter from Mike Stone. Telephone call to Adrienne Rakitin. | 1.40 | 455.00 |
| 09/27/02 | J. Dworak | Analysis regarding issues to financing property. | 0.90 | 227.50 |
| 10/08/02 | J. Dworak | Meeting with Adrienne Rakitin to discuss issues of alleged wrongful foreclosure. | 1.80 | 357.50 |
| 04/01/03 | J. Dworak | Meeting with Al Reuter and Adrienne Rakitin regarding settlement issue and cross complaint, | 3.70 | 1,258.00 |

| | | | | |
|---|---|---|---|---|
| 05/21/03 | J. Dworak | Meeting with Mrs. Rakitin and Al Reuter regarding status. Answer questions. | 2.90 | 544.00 |
| 06/23/03 | J. Dworak | Meeting with Adrienne Rakitin to discuss issues related to the Motion to Expunge Lis Pendens. | 1.40 | 136.00 |
| 07/17/03 | J. Dworak | Attend hearing on motion to expunge. Meeting with Adrienne Rakitin to discuss results of hearing. | 4.80 | 1,292.00 |
| 12/13/03 | J. Dworak | Meeting with Adrienne Rakitin to discuss issues related to lawsuit. | 4.20 | 1,020.00 |
| 01/08/04 | J. Dworak | Meeting with Mrs. Rakitin to discuss the approach to set aside for foreclosure sale. Outline issues and action items. | 2.90 | 490.00 |
| 01/08/04 | C. Long | Meeting with client regarding discovery. | 2.00 | 380.00 |
| 01/09/04 | J. Dworak | Telephone call to Mrs. Rakitin. Discuss how to proceed and status of the appraisal report. Outline to Mrs. Rakitin problem with winning any wrongful foreclosure case by attempting to explain that Dimas took millions of dollars which need to be repaid in all likelihood. | 1.80 | 630.00 |
| 01/19/04 | J. Dworak | Meeting with Mrs. Rakitin to discuss using Ms. Martens as a possible expert. Outline points to be addressed. Explain to Mrs. Rakitin the approach. | 3.90 | 1,326.00 |
| 02/10/04 | J. Dworak | Meeting with Mrs. Rakitin to go over issue related to the motion to set aside foreclosure sale, Discuss merits of claim. Attempt to explain to her problems and limitations of motion. | 3.90 | 646.00 |
| 02/13/04 | J. Dworak | Review problematic messages from Mrs. Rakitin. Telephone calls to Mrs. Rakitin attempting to address her concerns. Draft detailed letter to Mrs. Rakitin outlining issues. | 1.70 | 595.00 |
| 03/01/04 | J. Dworak | Meeting with Mrs. Rakitin to review legal research. Discuss motion to set aside trustees deed. Review argument, obtain her input. Discuss and review how to proceed. | 3.70 | 595.00 |
| 03/05/04 | J. Dworak | Telephone call from Adrienne. Telephone call to Adrienne. Update her on discussions with Edsel Williams and Laroy Smith. | 4.90 | 1,715.00 |
| 03/24/04 | J. Dworak | Repeated telephone calls from Adrienne Rakitin regarding complaints about advising the other members of Dimas LLC regarding the status of the matter. | 1.90 | 665.00 |
| 04/16/04 | J. Dworak | Meeting with Adrienne Rakitin regarding hearing and how to approach possible settlement issues. | 3.90 | 1,365.00 |
| 04/27/04 | J. Dworak | Meeting with Adrienne Rakitin to discuss letter sent to her advising her of the problems | 3.70 | 595.00 |

with her approach, how the numbers work out and to review letter to Mike Stone.

| Date | Name | Description | Hours | Amount |
|---|---|---|---|---|
| 04/29/04 | J. Dworak | Meeting with Adrienne Rakitin regarding proposal to Mike Stone and Andy Lewis and to have her comment upon and change letter to Mike Stone. Make edits and comments. | 2.90 | 665.00 |
| 05/04/04 | J. Dworak | Meeting with Adrienne Rakitin to discuss settlement issues, how to proceed, when to expect court ruling what to do with the case and on and on about the property and what it should sell for. | 3.80 | 1,330.00 |
| 05/17/05 | J. Dworak | Meeting with Adrienne Rakitin after settlement meeting with Andy Lewis and Mike Stone to go over issues and discuss settlement. Attempt over and over to explain that Dimas LLC could lose the property for ever and that offer of Andy Lewis should be discussed with Javed and Al Reuter. | 4.90 | 1,015.00 |
| 05/20/04 | J. Dworak | Another terrible meeting with Adrienne Rakitin going over same issue about status of order and complaints with Andy Lewis. Attempt to try to talk some sense to Adrienne without much success. Listen to her yell because of my opinion on how the Bankruptcy Court may rule. | 3.70 | 1,295.00 |
| 05/28/04 | J. Dworak | Meeting with Adrienne Rakitin regarding preparing settlement proposal. Draft settlement proposal to Michael Stone. | 1.70 | 595.00 |
| 08/03/04 | J. Dworak | Meeting with Adrienne Rakitin to discuss and review content of declaration after reviewing all the various documents provided. | 1.90 | 665.00 |
| 08/27/04 | J. Dworak | Telephone conference call with Steve Finley the attorney representing Adrienne Rakitin regarding motion and continuance of motion. | 1.10 | 385.00 |
| 09/24/04 | J. Dworak | Telephone conference call with Adrienne Rakitin to discuss hearing date, what the court is doing, when the hearing will occur when reply papers are due. | 2.40 | 595.00 |
| 10/01/04 | J. Dworak | Meeting and discussion with Adrienne Rakitin to discuss and review proposal. | 1.90 | 665.00 |
| 10/25/04 | J. Dworak | Meeting with Adrienne Rakitin to discuss content of transcript and answer questions of Adrienne Rakitin. | 2.90 | 1,015.00 |
| 10/29/04 | J. Dworak | Telephone conference call with Steve Finley regarding issues related to proposed order. | 0.70 | 245.00 |
| 11/05/04 | J. Dworak | Telephone calls from Adrienne Rakitin regarding issues related to status of case, order how to proceed. | 3.80 | 1,330.00 |
| 11/15/04 | J. Dworak | Telephone conference call with Adrienne Rakitin regarding how to try the case against Andy Lewis. | 1.90 | 665.00 |

| | | | | |
|---|---|---|---|---|
| 11/22/04 | J. Dworak | Meeting with Adrienne Rakitin related to issues involving Judge Morgan's ruling. Explain to Adrienne what can and cannot be done with an Order. | 1.90 | 490.00 |
| 12/08/04 | J. Dworak | Discussions with Adrienne Rakitin regarding what is necessary for trial preparation obtain her input. Provide information why her approach on experts will not comply with Federal Rules of Evidence. | 1.40 | 490.00 |
| 12/15/04 | J. Dworak | Meeting with Adrienne Rakitin regarding issue related to order and input into Plan of Reorganization. | 2.70 | 945.00 |
| 01/18/05 | J. Dworak | Meeting with Adrienne Rakitin prior to settlement conference at the Unites States Bankruptcy Court. | 0.90 | 337.50 |
| | | **TOTAL** | 115.40 | 30,569.00 |